UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 08-01157 (JR) |
| UNITED STATES DEPARTMENT OF JUSTICE | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this action, Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation seek the release of certain information from Defendant, the United States Department of Justice ("DOJ"), pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* On November 27, 2007, Plaintiffs submitted a five-part request to various components of Defendant seeking "records...regarding government tracking of the location of mobile phones without a prior judicial determination of probable cause." Pl. Consent Mot. Set Briefing Sched. ("Pl. Mot.") at 1. Those components have conducted extensive searches to locate such information and have produced certain records responsive to Plaintiff's request but have withheld others. The only issue in this action, by agreement of the parties, is the legality of Defendant's withholding of those records. As is shown below, because Defendant properly withheld the records at issue pursuant to Exemptions 2, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E) of FOIA, 5 U.S.C. § 552(b), it is entitled to summary judgment in this case.

## BACKGROUND

In letters to the Executive Office for U.S. Attorneys ("EOUSA") and the Drug Enforcement Administration ("DEA") dated November 27, 2007, Plaintiffs submitted a FOIA request to four components of the EOUSA, fifteen United States Attorney's Offices ("USAOs"), an advisory committee composed of United States Attorneys, and the DEA seeking five categories of records regarding:

1. Policies, procedures, and practices followed to obtain mobile phone location information for law enforcement purposes;

2. The "internal recommendation" that "federal prosecutors seek warrants based on probable cause to obtain precise location data in private areas" described in Ellen Nakashima, Cellphone Tracking Powers on Request, Washington Post, Page A01, Nov. 23, 2007 (Attached as Ex. 1);

3. Any violations of the "internal recommendation;"

4. The number of times the government has applied for a court order based on less than probable cause, authorizing it to obtain mobile phone location information, and whether such applications were successful;

5. The case name, docket number, and court of all criminal prosecutions, current or past, of individuals who were tracked using mobile location data, where the government did not first secure a warrant based on probable cause for such data.

EOUSA Req. at 2 (Attached as Ex. 2); DEA Req. at 2 (Attached as Ex. 3).

In a subsequent letter dated February 6, 2008 sent to the Office of Information and Privacy, a component of Defendant, Plaintiffs stated that the purpose of Category 5 of their request was to permit them to "ascertain[] the extent of the government's warrantless tracking of the location of cell phones, and to inform individuals that they may have been subjected to unconstitutional surveillance." Letter from Catherine Crump, ACLU to Office of Info. & Privacy, Dep't of Justice (Feb. 6, 2008) at 2-3 (Attached as Ex. 4).

On July 1, 2008, Plaintiffs commenced this action seeking enforcement of Category 5 of their request as to the EOUSA and enforcement of the entirety of their request as to the DEA and the USAOs for the following districts: California Central, California Northern, District of Columbia, Florida Southern, Indiana Northern, Louisiana Eastern, Louisiana Middle, Nevada, and New Jersey. Am. Compl. ¶ 25 & Req. Relief ¶ A (Docket #15).

On November 3, 2008, Defendant advised the Court in a scheduling report that, "[t]o the extent that they have not yet done so, [the] DEA and the USAOs that are the subject of this action will conduct searches for records responsive to Category 1 [of Plaintiffs' request]." Def. Sched. Rep. at 2 (Docket #17). Category 2 of Plaintiffs request was satisfied on August 22, 2008, when Defendant released an e-mail sent by Mark Eckenwiler of the Criminal Division of the DOJ dated November 16, 2007. Id. At 3. To address Category 4 of the request, Defendant conducted the search implemented by the Court's November 20, 2008 Order (Docket #18) and found no responsive records. Def. Stat. Rep. at 4 (Docket #20). In regards to Categories 3 and 5 of the request, Defendant advised the Court that "[n]one of the components subject to this action maintains a database or other indexing system that permits the identification of cases in which applications have been made for orders permitting mobile phone location information to be obtained, either on probable cause or otherwise." Def. Sched. Rep. at 4. Accordingly, Defendant informed the Court of its proposal to respond to Categories 3 and 5 of Plaintiffs' request by sending an e-mail to each Assistant United States Attorney ("AUSA") in the Criminal Division of the above-identified USAOs setting forth the following four questions:

1. Do you know of any application granted on or after September 12, 2001, to permit the government to obtain information from mobile carriers about where an individual's cell phone was (or is) located where no judicial determination of probable cause was made?

2. If your answer to Question 1 is "yes," was any individual prosecuted after any such application was granted? If so, please provide the case name and docket number (including court) of each prosecution.

3. If your answer to Question 1 is "yes," do you know of any application granted since November 16, 2007, to permit the government to obtain "GPS or similarly precise location data (sometimes called 'E-911 data') on target [cell] phones" from mobile carriers where no judicial determination of probable cause was made?

4. If your answer to Question 3 is "yes," was any individual prosecuted after any such application was granted? If so, please provide the case name and docket number (including court) of each prosecution.

Id. at 4-5.

In its November 20, 2008 Order, the Court approved the proposals contained in Defendant's scheduling report. On January 15, 2009, Defendant informed the Court in a status report that all of the searches for records responsive to Category 1 required by that Order had been completed; that 650 pages of records responsive to Category 1 had been located by the USAOs that were subjects of this action; that 281 of the 650 pages had been released in full, 77 had been released in part, and 292 had been withheld in full[1]; and that each withholding from those pages was based on one or more of the following: FOIA Exemption 3 (coupled with Fed. R. Crim. P. 6(e)); FOIA Exemption 5, FOIA Exemption 7(A); FOIA Exemption 7(C); FOIA Exemption 7(E); or the fact that the record was currently under a court order that prohibited its

[1] By letter dated May 14, 2009, EOUSA made an additional discretionary release to Plaintiffs of 130 pages in full. Decl. of Karen Finnegan ("Finnegan Decl.") (Attached as Ex. 5) ¶ 106. By separate letter also dated May 14, 2009, EOUSA made a supplemental release of 27 pages in full and 43 pages in part and withheld 1 page in full. Id. at ¶ 32. On May 15, 2009, the Criminal Division of the DOJ informed Plaintiff by letter that it would release an additional 2 pages. Id. at ¶ 56.

disclosure.[2] Def. Stat. Rep. at 3.

In the same status report, Defendant advised the Court that the e-mail required by the November 20, 2008 Order had been sent to each AUSA currently employed in the Criminal Division of each USAO that was a subject of this action; that 232 case names and docket numbers had been identified in response to Question 2 of the e-mail; that 23 case names and docket numbers had been identified in response to Question 4 of the e-mail; and that all of the case names and docket numbers had been withheld pursuant to FOIA Exemptions 6 and 7(C). Id. at 6.

On March 20, 2009, in response to the Court's February 27, 2009 Order (Docket #22) requiring Plaintiff to identify whether there was anything left to litigate, Plaintiff informed the Court that the sole issue remaining for adjudication in this action was whether the exemption provisions of FOIA had been applied correctly in withholding records and information responsive to Categories 1 and 5 of Plaintiffs' FOIA request. Pl. Mot. at 2 (Docket #24). As agreed to by the parties, Defendant now moves for summary judgment on that issue.

## ARGUMENT

## I. OVERVIEW OF FOIA AND STANDARD OF REVIEW

FOIA "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." Ctr. for Nat'l Sec. Studies v. DOJ, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing John Doe Agency v. John Doe Corp., 493 U.S. 146 (1989)). While FOIA requires agency disclosure under certain circumstances, it

[2] Upon review of the withheld information, it was determined that certain records are also encompassed by Exemptions 2, 6, and 7(D). Finnegan Decl. ¶¶ 57-61, 94-95, 96-99. These exemptions were not asserted in previous correspondence with Plaintiffs but are being invoked here.

also recognizes "that public disclosure is not always in the public interest." Baldridge v. Shapiro, 455 U.S. 345, 352 (1982). Accordingly, the statute requires agencies to release documents responsive to a properly submitted request but also provides for nine statutory exemptions to this general disclosure obligation. See 5 U.S.C. §§ 552(a)(3), (b)(1)-(b)(9). While the nine exemptions are to be "narrowly construed," FBI v. Abramson, 456 U.S. 615, 630 (1982), the Supreme Court has made clear that courts must give them "meaningful reach and application." John Doe Agency, 493 U.S. at 152.

The government bears the burden of justifying any withholdings of information under one or more of these nine exemptions, 5 U.S.C. § 552(a)(4)(B), which it can do by submitting a declaration and/or index that "describe the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such agency submissions are accorded substantial weight, Gardels v. CIA, 689 F.2d 1100, 1104 (D.C. Cir. 1982), and presumptions of good faith, SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and expertise, Piper v. DOJ, 294 F.Supp.2d 16, 20 (D.D.C. 2003). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" Wolf v. CIA, 473 F.3d 370, 374-375 (D.C. Cir. 2007).

Typically, FOIA cases should be resolved on motions for summary judgment. See, Harrison v. EOUSA, 377 F.Supp.2d 141, 145 (D.D.C. 2005). Courts are to review challenges to agency decisions to withhold information *de novo*, 5 U.S.C. § 552(a)(4)(B), and should grant summary judgment where there are no material facts at issue and the agency is entitled to

judgment as a matter of law. See Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309, 314-315 (D.C. Cir. 1988).

## II. DEFENDANT'S ASSERTION OF EXEMPTION 2 TO WITHHOLD CERTAIN RESPONSIVE RECORDS IS PROPER.

Information that is "related solely to the internal personnel rules and practices of an agency" is exempt from disclosure pursuant to Exemption 2. 5 U.S.C. § 552(b)(2). Exemption 2 applies to materials "'used for predominantly internal purposes.'" Schiller v. National Labor Relations Bd, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc)). This exemption has been held to protect: (1) information the release of which would risk circumvention of agency regulations or statutes, see Crooker, 670 F.2d at 1074, and (2) "routine matters of merely internal interest," id. at 1069 (citation omitted). The former application of the exemption is known as "high 2," while the latter is known as "low 2." See Wiesenfelder v. Riley, 959 F. Supp. 532, 535 (D.D.C. 1997).

Presently at issue is the application of the "high 2" exemption to withhold portions of internal templates for applications, proposed orders and affidavits[3]. Finnegan Decl. ¶¶ 60-61 & Attach. YY. (Defendant is also asserting Exemption 7(E), see infra section VIII, to withhold these same documents.) The withheld information relates to internal techniques and procedures for law enforcement investigations and prosecutions. Id. at ¶ 58. The information "does not purport to regulate activities among members of the public ...[and does not] set standards to be followed by agency personnel in deciding whether to proceed against or to take action affecting

[3] DOJ has asserted Exemption 2 to withhold, in part or in full, documents listed in Attachment YY of the Finnegan Declaration with the following document numbers: 2, 69, 71-72.

members of the public." Cox v. DOJ, 601 F.2d 1, 5 (D.C. Cir. 1979) (per curiam). Accordingly, the information is used for predominantly internal purposes and is therefore eligible for withholding under Exemption 2.

Release of these documents would risk circumvention of the law by "imped[ing] the usefulness of USAOs' internal practices and procedures [and] nullify[ing] the effectiveness of law enforcement techniques used in detecting criminal activity and in locating fugitives." Finnegan Decl. ¶ 58. Specifically, these documents contain information on "(1) the geographic and physical limitations of a caller identification feature and of a Global Positioning System ("GPS") feature, (2) the conditions under which a subject's cell phone activity will be captured, (3) the availability of GPS capabilities and ways in which [they] can be activated, (4) the conditions under which cell site information will not be collected, and (5) the ways in which co-conspirators can be identified by using information related to a target's cell phone activity." Id. ¶ 59. This information could be used by individuals involved in criminal activities "to avoid detection, to destroy or tamper with evidence, and to coordinate false exculpatories." Id. at ¶ 60. Because release of this information could enable circumvention of the criminal laws, Defendant's assertion of Exemption 2 to withhold it is proper.

## III. DEFENDANT'S ASSERTION OF EXEMPTION 3 TO WITHHOLD CERTAIN RESPONSIVE RECORDS IS PROPER.

Exemption 3 removes from the purview of FOIA "matters that are specifically exempted from disclosure by statute (other than 5 U.S.C. § 552b) provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The "sole issue for decision" under Exemption 3 "is the

existence of a relevant statute and the inclusion of withheld material within that statute's coverage." Goland v. CIA, 607 F.2d 339, 350 (D.C. Cir. 1978).

Defendant withheld certain information from Plaintiffs pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure. That rule "prohibits certain persons from 'disclos[ing] a matter occurring before [a] grand jury.'" Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1113 (D.C. Cir. 2007) (quoting Fed. R. Crim. P. 6(e)(2)(B)). Specifically, a disclosure is barred by Rule 6(e) if it would "tend to reveal some secret aspect of the grand jury's investigation[,]" e.g., "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'" Senate of P.R. v. DOJ, 823 F.2d 574, 582 (D.C. Cir. 1987) (internal quotation marks omitted). It is well settled that Rule 6(e) "counts as a statute for purposes of Exemption 3." Sussman, 494 F.3d at 1113; see also; Lopez v. DOJ; 393 F.3d 1345, 1349 (D.C. Cir. 2005) (applying Exemption 3 to grand jury materials). In fact, the rule specifically prohibits government attorneys from disclosing any information about grand jury proceedings. Fed. R. Crim. P. 6(e)(2)(B)(vi); cf. U.S. v. John Doe, Inc. I, 481 U.S. 102, 111-12 (1987) (confirming that the DOJ was unable to disclose grand jury information even between its own components without a court order). Here, Defendant has withheld all information presented in grand jury proceedings. Finnegan Decl. ¶ 64 & Attach. YY. Release of that information would reveal the scope of those grand jury proceedings and the direction of related investigations by disclosing investigation targets, evidence presented to the grand juries, and the sources from which such evidence was obtained. Id. at ¶ 65. Release of the information would result in disclosure of "where the government sought to find evidence to develop its case, how [it] developed its case, and who [it] relied upon to develop the elements of crimes." Id.

Based on Exemption 3, Defendant's non-disclosure of this information was appropriate.

## IV. DEFENDANT'S ASSERTION OF EXEMPTION 5 TO WITHHOLD CERTAIN RESPONSIVE RECORDS IS PROPER.

Exemption 5 excuses from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In particular, it protects information "normally privileged in the civil discovery context." NLRB v. Sears Roebuck & Co., 421 U.S. 132, 149 (1976). Accordingly, among other privileges, information that would be protected under the attorney-client privilege, the attorney work-product doctrine, and the deliberative process privilege can be properly withheld by an agency pursuant to Exemption 5. Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980). Defendant properly withheld information that would be protected pursuant to each of these privileges.

### A. The Attorney-Client Privilege Protects Certain Responsive Records.

The attorney-client privilege protects confidential communications made between attorneys and their clients when the communications are made for the purpose of securing legal advice or services. See In re Sealed Case, 737 F.2d 94, 98–99 (D.C. Cir. 1984). A government agency, like a private party, "needs . . . assurance of confidentiality so it will not be deterred from full and frank communications with its counselors." In re Lindsey, 148 F.3d 1100, 1105 (D.C. Cir. 1998). The attorney-client privilege encompasses all situations in which an attorney's counsel is sought on a legal matter, and applies both to a client's disclosures to an attorney and an attorney's communications to a client. See Coastal States, 617 F.2d at 862. Here, Defendant has

withheld a number of attorney-client communications[4] "regarding the standard of proof needed to obtain a court order to allow the capture of a target's or subject's cell/site location information." Finnegan Decl. ¶ 70 & Attach. YY. The e-mails contain requests by federal law enforcement agents for legal advice from AUSAs relating to case-specific scenarios as well as legal opinions and advice provided by AUSAs on such matters. Id. at ¶ 70. Because this information falls squarely within the attorney-client privilege, Defendant was justified in withholding it from Plaintiffs under Exemption 5.

### B. The Attorney Work-Product Doctrine Protects Certain Responsive Records.

The attorney work-product doctrine prevents the disclosure of "documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated." Schiller, 964 F.2d at 1208. Such documents include "the files and the mental impressions of an attorney...reflected of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." Hickman v. Taylor, 329 U.S. 495, 510-11 (1947). The attorney work-product doctrine thus protects information generated by legal counsel where "the document can fairly be said to have been prepared or obtained because of the prospect of litigation." In re Sealed Case, 146 F.3d. 881, 884 (D.C. Cir. 1998)

Documents withheld by Defendant that are protected under the attorney work-product doctrine include (1) an internal e-mail message regarding a denial of an application for cell site information and (2) draft application and order templates, draft memoranda of points and

[4] DOJ has asserted Exemption 5 in conjunction with the attorney-client privilege to withhold, in part or in full, documents listed in Attachment YY of the Finnegan Declaration with the following document numbers: 44, 50-51, 53, 56-62, 64, 72.

authorities and draft affidavits.[5] Finnegan Decl ¶¶ 67-68 & Attach. YY. These records reflect matters such as legal strategy, interpretations, and personal evaluations and opinions related to the procedures for obtaining cell site/location information pursuant to a court order. Id. at ¶ 68. The records were prepared by or at the request of AUSAs in anticipation of or during litigation and contain details of AUSAs' legal strategy and mental impressions about certain prosecutions. Id. The records relate to specific matters being considered for criminal action against targets and subjects, id. at ¶ 69, and contain information about obtaining evidence for prosecution, id. at ¶ 68. The withheld draft application and order templates, memoranda, and affidavits, as preliminary versions of documents submitted to a court in support of a party's case, would not have been prepared but for the prospect of litigation in which final versions of such documents could be used. Similarly, the withheld email relates to the denial of a specific application for obtaining cell site information and was prepared only because of the existence of the case to which the application related. The email and draft documents are therefore both protected under the attorney work-product doctrine and can be properly withheld pursuant to Exemption 5.

### C. The Deliberative Process Privilege Protects Certain Responsive Records.

The deliberative process privilege applies to "decisionmaking of executive officials generally," and protects documents containing deliberations that are part of the process by which government decisions are formulated. In re Sealed Case, 121 F.3d 729, 737, 745 (D.C. Cir. 1997). The purpose of this privilege is to encourage frank discussion of legal and policy issues within the government and to protect against public confusion resulting from disclosure of

---

[5] DOJ has asserted Exemption 5 in conjunction with the attorney work-product doctrine to withhold, in part or in full, documents listed in Attachment YY of the Finnegan Declaration with the following document numbers: 9, 19-24, 30-31, 35-36, 48, 65-67.

reasons and rationales that were not ultimately the bases for governmental action. See, e.g., Mapother v. DOJ, 3 F.3d 1533, 1537 (D.C. Cir. 1993); Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); Montrose Chem. Corp. of Cal. v. Train, 491 F.2d 63, 70 (D.C. Cir. 1974). Records are encompassed by the deliberative process privilege if they are both "predecisional" and "deliberative." Coastal States 617 F.2d at 866. A document is predecisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Formaldehyde Inst. v. Dep't of Health & Human Serv., 889 F.2d 1118, 1122 (D.C. Cir. 1989) (internal quotations omitted). A predecisonal document is, in turn, deliberative if "disclosure of [the document] would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Id. (internal quotations omitted).

Documents withheld by Defendant that are protected under the deliberative process privilege include (1) internal e-mail messages, (2) draft application and order templates, draft memorandum of points and authorities, draft declarations and draft affidavits, (3) draft correspondence, and (4) internal memoranda.[6] Finnegan Decl. ¶¶ 69-70 & Attach. YY. These records are pre-decisional because they reflect matters under consideration by federal prosecutors and law enforcement personnel in relation to federal prosecutions. Id. at ¶ 69. The disclosure of those records would "reveal internal deliberations among government personnel," including

---

[6] DOJ has asserted Exemption 5 in conjunction with the deliberative process privilege to withhold, in part or in full, documents listed in Attachment YY of the Finnegan Declaration with the following document numbers: 4-24, 30-31, 35-36, 38-66, 72.

"discussions of various litigation issues, alternatives and strategies." Id.

For example, certain of the withheld records contain requests for advice from AUSAs and the legal opinions and advice provided by AUSAs in response to those requests. Id. at ¶ 70. In addition to the request for and provision of legal advice, the withheld emails and memoranda also contain internal and intra-agency discussions, suggestions, and internal guidance on topics such as procedures for obtaining cell site information, locating fugitives, the impact of recent court decisions, procedures for obtaining GPS information, and cell phone location information. Finnegan Decl. Attach. YY. The records are deliberative because they consist of "internal deliberations," which, if revealed, "would jeopardize the candid and comprehensive discussions that are essential for efficient and effective agency decision-making." Id. at ¶ 70. The back and forth nature of these discussions, suggestions and similar communications is an essential aspect of agency decisionmaking that would be inhibited if subjected to the scrutiny of public disclosure. The other withheld records consist of draft documents, which as preliminary materials subject to repeated revision, are inherently predecisional and deliberative. Indeed, in protecting a draft affidavit pursuant to the deliberative process privilege, this Court recognized that "it is axiomatic that draft documents reflect some give and take on the part of those involved in the drafts." LaRouche v. Dep't of Treasury, No. 91-1655 slip op. at 30 (D.D.C. May 22, 1998). Thus, the draft documents as well as the emails and memoranda discussed above are protected under the deliberative process privilege and can be properly withheld under Exemption 5.

## V. DEFENDANT'S ASSERTION OF EXEMPTION 7(A) TO WITHHOLD CERTAIN RESPONSIVE RECORDS IS PROPER.

Exemption 7(A) permits non-disclosure of "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The government can withhold information on this basis if its release could reasonably be expected to cause some articulable harm to a law enforcement proceeding. Voinche v. FBI, 46 F.Supp.2d 26, 31 (D.D.C. 1999). In justifying its use of this exemption, the government can rely not only on pending law enforcement proceedings but also on prospective ones. Id. Moreover, a court can accept an agency's assertion of Exemption 7(A) based on a generic determination that the disclosure of particular kinds of documents would likely interfere with enforcement proceedings; an agency does not need to identify specific harms that are likely to follow from disclosure for each individual document withheld. See NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 234–36 (1978).

Defendant has withheld a document located in the USAO for the District of Nevada that includes a sealed application and a court order to obtain historical cell site information in a criminal investigation involving death threats made against a federal employee.[7] Finnegan Decl. ¶¶ 82-83 & Attach. YY. It has also withheld applications, orders, affidavits, and service provider orders related to cases identified by six USAOs in response to Category 5 of Plaintiff's FOIA request. Id. at ¶ 84. These records all relate to criminal investigations and prosecutions of individuals for violations of federal law. Id. at ¶ 76. All such law enforcement proceedings are

[7] DOJ has asserted Exemption 7(A) to withhold in full document number 67 listed in Attachment YY of the Finnegan Declaration.

currently pending - either as matters before a grand jury or as cases awaiting trial or sentencing. Id. at ¶ 77. Release of the withheld information could harm these proceedings in various ways. First, it could be used to counteract evidence developed by investigators in support of their cases. Id. at ¶ 79; see Mapother, 3 F.3d at 1543 (holding that release of information could interfere with a law enforcement proceeding by providing a roadmap of the government's evidence and insights into its strategy). Second, the information could reach potential jurors and lead them to prematurely form opinions on the pending cases. Finnegan Decl. at ¶ 79. Third, the information could enable third parties to harass or intimidate the government's potential witnesses. Id. at ¶ 80; see Kay v. FCC, 867 F.Supp. 11, 19 (D.D.C. 1994) (holding that release of information could interfere with a law enforcement proceeding by leading to retaliatory action and intimidation of witnesses). Finally, releasing the information could enable third parties to create false evidence to weaken the government's position in potential cases. Finnegan Decl. at ¶ 80; see Nishnic v. DOJ, 671 F.Supp. 776, 794 (D.D.C. 1987) (finding that release of information could interfere with law enforcement proceedings by leading to the suppression or fabrication of evidence). In light of these multiple ways in which disclosure of the withheld information could interfere with law enforcement proceedings, Defendant justifiably asserted Exemption 7(A) to withhold it.

## VI. DEFENDANT'S ASSERTION OF EXEMPTIONS 6 AND 7(C) TO WITHHOLD CERTAIN RESPONSIVE RECORDS IS PROPER.

Exemptions 6 and 7(C) protect the privacy of individuals from unwarranted invasion. The Supreme Court has adopted a broad construction of the privacy interests protected by these exemptions, rejecting a "cramped notion of personal privacy" and emphasizing that "privacy encompass[es] the individual's control of information concerning his or her person." DOJ v.

Reporters Comm. for Freedom of the Press, 489 U.S. 749, 763 (1989).[8] Privacy is of particular importance in the FOIA context because a disclosure required by FOIA is a disclosure to the public at large. See Painting & Drywall Work Preservation Fund, Inc. v. HUD, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (finding that if information "must be released to one requester, it must be released to all, regardless of the uses to which it might be put").

**A. Defendant Properly Withheld Information Pursuant to Exemption 7(C).**

Exemption 7(C) allows for the withholding of "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) requires the agency to determine whether information can be withheld by "balanc[ing] the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Davis v. DOJ, 968 F.2d 1276, 1281 (D.C. Cir. 1992).

In weighing the privacy interests in non-disclosure, courts have recognized the considerable stigma and potential for harassment and embarrassment inherent in being associated with law enforcement proceedings and criminal activity. See, e.g., Fitzgibbon v. CIA, 911 F.2d 755, 767 (D.C. Cir. 1990) (acknowledging stigmatic connotations of being mentioned in law enforcement files); Lesar v. DOJ, 636 F.2d 472, 488 (D.C. Cir. 1980) (noting the reputational harm and personal embarrassment of being mentioned in law enforcement files) ; Morley v. CIA, 453 F.Supp.2d 137, 155 (D.D.C. 2006) (acknowledging stigmatic connotations of being

---

[8] While Reporters Committee was decided under Exemption 7(C), the definition of the public interest to be considered is the same as for Exemption 6. See Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

mentioned in law enforcement files); Palacio v. DOJ, No. 00-1564, 2002 U.S. Dist. LEXIS 2198 at *9 (D.D.C. Feb. 11, 2002) (finding that disclosure of an individual's name in connection with criminal investigations could subject him to harassment). Accordingly, it is settled law that parties mentioned in law enforcement materials have a presumptive privacy interest in having their names and other personal information withheld from public disclosure. See, e.g., Nation Magazine Washington Bureau v. U.S. Customs Serv., 71 F.3d 885, 894 (D.C. Cir. 1995); SafeCard, 926 F.2d at 1206; Bast v. DOJ, 665 F.2d 1251, 1254 (D.C. Cir. 1981). The Supreme Court has concluded that "as a categorical matter . . . a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy." Reporters Comm., 489 U.S. at 780; Perrone v. FBI, 908 F. Supp. 24, 26 (D.D.C. 1995).

On the other side of the balance, the public interest to be considered in assessing the applicability of Exemption 7(C) is limited to FOIA's "core purpose" of "shed[ding] light on an agency's performance of its statutory duties." See Reporters Comm., 489 U.S. at 773. This purpose "is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." Id. Therefore, courts have typically found no public interest in knowing the names of individuals mentioned in law enforcement records. See id. (noting that information about private persons sheds no light on the conduct of a government agency); SafeCard, 926 F.2d at 1205 ("[t]he public interest in disclosure [of identities of persons mentioned in law enforcement files] is not just less substantial [than the private interest in non-disclosure], it is insubstantial."); Senate of P.R., 823 F.2d at 588 (finding insufficient public interest to defeat government's use of Exemption 7(C) to withhold identities of individuals mentioned in law enforcement files); Blanton v. DOJ, 63 F.

Supp. 2d 35, 45 (D.D.C. 1999) (quoting SafeCard).

Balancing of these interests has lead courts to uphold the use of Exemption 7(C) to withhold documents in protection of privacy interests of criminal suspects, see, e.g., Spirko v. USPS, 147 F.3d 992, 998-99 (D.C. Cir. 1998); Computer Prof'ls for Social Responsibility v. US Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996), law enforcement officials, see Stone v. FBI, 727 F.Supp. 662, 668 n.3 (D.D.C 1990), and individuals who are merely mentioned in records related to law enforcement proceedings, SafeCard, 926 F.2d at 1206. In fact, the Supreme Court in Reporters Committee found that a substantial privacy interest can exist for purposes of Exemption 7(C) even in law enforcement records that have been made public at some place and point in time. In that case, the Court decided that criminal identification records known as "rap sheets," which contain descriptive information related to individuals such as history of arrests, charges, convictions and incarcerations, could be withheld pursuant to Exemption 7(C). Reporters Comm., 489 U.S. at 752. More recently, in applying that ruling in a case concerning a FOIA request similar Plaintiffs', this Court held that Exemption 7(C) was a proper basis to withhold information from a list of criminal cases sought in a FOIA request, including the names of individuals prosecuted, corresponding case numbers, court numbers, and other assorted information. See Harrison, 377 F.Supp.2d at 148.

In this case, Defendant has withheld names and identifying information about persons of investigative interest to the government contained in (1) internal e-mails; (2) drafts and templates of applications, proposed orders, affidavits, memoranda of law, and declarations; and (3) material

responsive to Category 5 of Plaintiff's request.[9] Finnegan Decl. ¶ 91 & Attach. YY. This information was all compiled by USAOs for the criminal investigation and prosecution of individuals for violations of various federal laws. Id. at ¶ 86. Release of the names and identifying information of these persons of investigative interest could subject them to "harassment or embarrassment, as well as undue public attention." Id. at ¶91. Meanwhile, there is no relevant public interest in release of this information because it "sheds no light on the operations and activities of the government." Id. As a result, this information was properly withheld pursuant to Exemption 7(C).

Defendant has also withheld the names of federal and state law enforcement personnel contained in (1) an internal e-mail and (2) drafts of applications, proposed orders, memoranda of law, affidavits, and declarations.[10] Id. at ¶92 & Attach. YY. This information was all compiled by USAOs for the criminal investigation and prosecution of individuals for violations of various federal laws. Id. at ¶86. The persons whose names were withheld are responsible for "conducting, supervising, and/or maintaining the investigative activities reported in the investigative records." Id. ¶ 92. These individuals have a substantial privacy interest in having their names withheld because publicity could impair their effectiveness in future investigations, lead to unnecessary, unofficial questioning related to their investigations, and trigger hostilities

[9] DOJ has asserted Exemption 7(C) to withhold the names and identifying information of persons of investigative interest from the documents listed in Attachment YY of the Finnegan Declaration with the following document numbers: 9, 19-24, 29-31, 35-37, 48, 65-67.

[10] DOJ has asserted Exemption 7(C) to withhold the names and identifying information of federal and state law enforcement personnel from the documents listed in Attachment YY of the Finnegan Declaration with the following document numbers: 20-24, 30-31, 35-36, 38, 48, 51, 65-67.

towards them from the subjects of their investigations. Id. On the other hand, there is no legitimate public interest in release of their names because it would "not shed light on the operations and activities of the federal government." Id. Thus, Exemption 7(C) permits the federal government to withhold this information.

Finally, Defendant has withheld the names and identifying information of individuals merely mentioned in (1) internal e-mail messages and (2) draft applications and proposed orders.[11] Id. at ¶ 93 & Attach. YY. This information was all compiled by USAOs for the criminal investigation and prosecution of individuals for violations of various federal laws. Id. at ¶ 86. The disclosure of these names and identifying information could cause unsolicited and unnecessary attention to be focused on these persons and/or their families and could cast them in an unfavorable or negative light. Id. at ¶ 93. There is no public interest in releasing the names and identifying information of these persons because it would shed no light on the operations and activities of the federal government. Id. This information was therefore properly withheld pursuant to Exemption 7(C).

**B. Defendant Properly Withheld Information Pursuant to Exemption 6.**

Exemption 6 allows withholding of information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). See U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 599–600 (1982) ("[T]he primary concern of Congress in drafting Exemption 6 was to provide for the confidentiality of personal matters."). The Supreme

---

[11] DOJ has asserted Exemption 7(C) to withhold the names and identifying information of persons merely mentioned from the documents listed in Attachment YY of the Finnegan Declaration with the following document numbers: 15, 22-24, 37, 67.

Court has interpreted the exemption's reference to "similar files" to include "all information that applies to a particular individual." Lepelletier v. FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999). Exemption 6 can be invoked to withhold information if "the privacy interest in non-disclosure" outweighs the "public interest in the release of the records." Id. In doing this balancing, the only relevant public interest to be considered is the extent to which disclosure will serve "the core purpose of [] FOIA, which is contribut[ing] significantly to public understanding *of the operations or activities of the government.*" US Dep't of Def. v. Fed. Labor Relations Auth., 510 U.S. 487, 495 (1994) (internal quotation marks omitted) (emphasis in original).

Defendant invoked Exemption 6 in conjunction with and as an alternate justification to Exemption 7(C) to withhold the names and identifying information of persons of investigative interest, law enforcement personnel, and persons merely mentioned in investigative records. Finnegan Decl. ¶ 95 & Attach. YY. These names and identifying information were contained in internal e-mails and drafts of applications, proposed orders, memoranda of law, affidavits, and declarations.[12] Id. As explained above in the discussion of Exemption 7(C) and in the Finnegan Declaration, the individuals to whom the information pertains have significant privacy interests in preventing disclosure of the information, but disclosure would serve no public interest. Accordingly, disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. Defendant is therefore justified in withholding the information pursuant to Exemption 6.

---

[12] DOJ has asserted Exemption 6 to withhold names and identifying information of persons from the documents listed in Attachment YY of the Finnegan Declaration with the following document numbers: 9, 15, 19-24, 29-31, 35-38, 48, 51, 65-67.

## VII. DEFENDANT'S ASSERTION OF EXEMPTION 7(D) TO WITHHOLD CERTAIN RESPONSIVE RECORDS IS PROPER.

Exemption 7(D) permits the withholding or redacting of law enforcement records the release of which "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). A confidential source is a person who "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." DOJ v. Landano, 508 U.S. 165, 172 (1993) (internal quotation and citation omitted). Unlike Exemption 7(C), Exemption 7(D) is an absolute protection which requires no balancing of public and private interests. See Dow Jones & Co. v. DOJ, 917 F.2d 571, 575-76 (D.C. Cir. 1990).

Defendant has invoked Exemption 7(D) to withhold certain information contained in draft applications, draft orders, draft affidavits, and draft memoranda of law.[13] Finnegan Decl. ¶ 99 & Attach. YY. This information was obtained from various individuals "during federal criminal investigations of a drug distribution and money laundering organization, an auto theft ring, and in a fugitive investigation." Id. at ¶ 97. Based on the nature of these crimes and the relations of the sources to those crimes, see Landano, 508 U.S. at 179, assurances of confidentiality to those sources can be inferred. The sources provided detailed information relating to the criminal activities of targeted investigative subjects involved with the aforementioned crimes, all of which

---

[13]DOJ has asserted Exemption 7(D) to withhold, in full or in part, the documents listed in Attachment YY of the Finnegan Declaration with the following document numbers: 20, 22, 48, 65.

have an intimidating and potentially violent nature. Finnegan Decl. at ¶ 99. The sources had direct contact with the investigatory subjects and provided details as to their personal lives and criminal conduct. Id. Moreover, the sources were closely connected to the investigatory targets and their criminal activity, id., suggesting that the risk of retaliation against the sources for their cooperation with law enforcement is not insignificant. This consideration is especially concerning because release of the withheld information that was provided by these sources could reveal their identities. Id. at ¶ 97. Based on these circumstances, assurances of confidentiality to these individuals can be reasonably inferred and they therefore qualify as confidential sources. Consequently, Defendant acted properly in asserting Exemption 7(D) to withhold the information that they provided in the course of criminal investigations.

## VIII. DEFENDANT'S ASSERTION OF EXEMPTION 7(E) TO WITHHOLD CERTAIN RESPONSIVE RECORDS IS PROPER.

Exemption 7(E) permits withholding of information compiled for law enforcement purposes if release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions..." 5 U.S.C. § 552(b)(7)(E). Congress intended for Exemption 7(E) to protect from disclosure not only those techniques and procedures used to prevent and protect against crimes, but also those used to investigate crimes after their commission. See, e.g., PHE, Inc. v. DOJ, 983 F.2d 248, 250–51 (D.C. Cir. 1993). Exemption 7(E) does not require a particular determination of harm that would result from disclosure of specific records or information; rather, the exemption categorically protects information related to law enforcement techniques. See Smith v. Bureau of Alcohol, Tobacco & Firearms, 977 F. Supp. 496, 501 (D.D.C. 1997) ("Exemption 7(E) provides categorical protection to information related to law enforcement techniques."); Fisher v. DOJ, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), aff'd,

968 F.2d 92 (D.C. Cir. 1992). Even when the identity of a technique is generally known, Exemption 7(E) will still apply to protect against disclosure of its details so long as (1) the manner and circumstances of its use are not generally known or (2) the disclosure of the details could reduce the technique's effectiveness. See Blanton, 63 F. Supp. 2d at 49–50 (holding that Exemption 7(E) applied to a polygraph examination); Coleman v. FBI, 13 F. Supp. 2d 75, 83 (D.D.C. 1998) (same).

Pursuant to Exemption 7(E), Defendant has withheld information contained in (1) internal e-mails, (2) an internal memorandum, and (3) templates and drafts of applications, orders, memoranda of law, declarations, and affidavits.[14] Finnegan Decl. ¶ 104 & Attach. YY. The withheld information was all compiled "for investigatory purposes in connection with prospective or pending criminal prosecutions." Id. at ¶ 103. The non-disclosed information contains the following details related to cell phone monitoring techniques and procedures for law enforcement investigations and prosecutions: (1) the manner in which cell phone subscriber information is captured on a subject cell phone; (2) the variations of coverage of a court order as applied to a subject's cell phone number; (3) the geographic and physical limitations of a caller identification feature and of a GPS feature; (4) the conditions under which a subject's cell phone activity will be captured; (5) the manner in which subjects in money laundering activities use cell phones to further their criminal activity; (6) recommendations on requesting court approval for the collection of historical cell site information or GPS information; (7) the availability of GPS capabilities and ways in which they can be activated; (8) the manner in which law enforcement

[14] DOJ has asserted Exemption 7(E) to withhold, in full or in part, the documents listed in Attachment YY of the Finnegan Declaration with the following document numbers: 1-11, 13-15, 17-18, 25-29, 32-34, 40-41, 44-45, 47, 59, 61-62, 68-71.

officials use cell phone location information and the ways in which subjects/targets can use the knowledge that the government is monitoring cell phone activity; (9) the legal requirements for seeking court approval to obtain cell site and non-GPS information, and the scope of the information to be gathered with the court order; (10) the type of transmitted signaling information that is collected pursuant to a court order; (11) the types of unique identifiers of the target cell phone that will be provided pursuant to a court order; (12) the conditions under which cell site information will not be collected; and (13) the ways in which co-conspirators can be identified by using information related to a target's cell phone activity. Id. at ¶ 102.

While it may be generally known that law enforcement agencies can monitor targets' cell phone use, the withheld material contains a level of detail regarding cell phone technology and its use as a law enforcement technique that is not well-known to the public. Id. at ¶ 103. Moreover, the release of the specific details generally described above may reduce the effectiveness of cell phone monitoring techniques. Id. The withheld information is not only technical but also practical, and therefore could "provide a fairly clear roadmap to those individuals who are interested in avoiding detection of their criminal activities." Id. In particular, releasing the information "would equip lawbreakers with information pertaining to the geographic and physical limitations of caller identification and GPS features, [the] conditions [under which] their cell phone activity will be captured, the ways in which GPS capabilities are activated, [times] when their cell phone activity will not be captured, and the ways in which law enforcement agents identify co-conspirators. The possession of this information by individuals involved in criminal activity would allow them to take evasive actions in order to avoid detection, to destroy or tamper with evidence, and to coordinate false exculpatories." Id. at ¶ 104. Thus, because the level of

detail contained in the withheld information is not generally known and because release of the information would reduce the effectiveness of cell phone monitoring techniques, Exemption 7(E) is applicable. Therefore, Defendant's withholding of information to prevent disclosure of techniques and procedures for law enforcement investigations and prosecutions is appropriate.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant summary judgment in its favor.

Dated: May 29, 2009

Respectfully submitted,

TONY WEST
Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

*s/ Vikas Desai*
VIKAS DESAI
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW, Rm. 6145
Washington, DC 20530
Phone: (202) 514-3492
Fax: (202) 616-8460
E-mail: vikas.desai@usdoj.gov

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2009, I filed a true and correct copy of the foregoing United States Department of Justice's Memorandum in Support of Defendant's Motion for Summary Judgment with the Court's Electronic Filing System, which will send an electronic notice to the attorney of record for each party.

*s/ Vikas Desai*
VIKAS DESAI