# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, ET AL. ) | |
| ) | |
| PLAINTIFFS ) | |
| ) | |
| v. ) | Civ. No. 08-01157 (JR) |
| ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| DEFENDANT ) | |
| ) | |
| _____) | |

## DECLARATION OF KAREN M. FINNEGAN

I, Karen M. Finnegan, declare the following to be a true and correct statement of facts:

1.) I am an Attorney-Advisor with the Executive Office for United States

Attorneys ("EOUSA"), United States Department of Justice. I am assigned to the component of

EOUSA designated to administer the Freedom of Information Act ("FOIA"), 5 U.S.C. §552,

amended by the OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, and the

Privacy Act of 1974 ("PA"), 5 U.S.C.§552a. In that capacity, my responsibilities include: acting

as a liaison with other divisions and offices of the Department of Justice (DOJ) in responding to

access requests and the litigation filed under both the Freedom of Information Act (FOIA) and the

Privacy Act of 1974 (PA); the review of FOIA/PA requests for access to records located in this

office and 93 United States Attorney's offices (USAOs) and the case files arising therefrom; the

review of correspondence related to requests; the review of searches conducted in response to

access requests; and the preparation of EOUSA's responses thereto to ensure that determinations

to withhold or release responsive records are in accordance with the provisions of both the FOIA

and the PA, as well as with DOJ regulations (28 C.F.R. §§ 16.3 and 16.40).

2.) As an Attorney-Advisor of EOUSA's FOIA/PA unit, I have authority to

release and/or withhold records requested under the FOIA/PA, and to explain the rationale for EOUSA's disclosure determinations. The statements I make hereinafter are based on my review of the official files and records of EOUSA, my own personal knowledge, or information acquired by me through the performance of my official duties. Due to the nature of my official duties, I am personally familiar with the procedures followed by EOUSA in responding to Plaintiff's FOIA request, which forms the basis for this litigation.

3.) This declaration explains the procedures that were followed in responding to Plaintiff's FOIA request, which is the subject of the Complaint filed on July 1, 2008.

4.) The purpose of this declaration is to provide the Court and Plaintiff with an explanation of the handling of its access requests. This declaration is submitted in support of Defendant's motion for summary judgement.

## **BACKGROUND**

5.) On November 30, 2007, EOUSA received a copy of Plaintiff's FOIA request dated November 29, 2007, which sought access to "records regarding" the following:

1.) Policies, procedures, and practices followed to obtain mobile phone location information for law enforcement purposes;

2.) The "internal recommendation" that "federal prosecutors seek warrants based on probable cause to obtain precise location data in private areas" described in Ellen Nakashima, *Cellphone Tracking Powers on Request*, Washington Post, Page A01, Nov. 23, 2007, attached as Appendix A;

3.) Any violations of the "internal recommendation";

4.) The number of times the government has applied for a court order based on less than probable cause, authorizing it to obtain mobile phone location information, and whether such applications were successful;

5.) The case name, docket number, and court of all criminal prosecutions, current or past, of individuals who were tracked using mobile location data, where the government did not first secure a warrant based on probable cause for such data.

Plaintiff requested that a search for records responsive to this request be conducted in the following locations: California, District of Columbia, Indiana, Louisiana, New Jersey, Florida, and Nevada.[1]  Specifically, Plaintiff requested that for each state listed, a search be conducted in "all the United States Attorneys' Offices within the state," and that a search also be conducted in the EOUSA's Offices of the Director, Counsel to the Director, Attorney General Advisory Committee (AGAC), Legal Programs, and General Counsel.  Plaintiff also requested expedited processing of this request, a limitation of processing fees as a representative in the news media, and a waiver of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  (**See** **Attachment A.**)

6.)  By letter dated December 7, 2007, EOUSA denied Plaintiff's request for expedited processing of its request and advised that it could file an administrative appeal of this denial with the U.S. Department of Justice, Office of Information and Privacy ("OIP") (currently the Office of Information Policy), 1425 New York Avenue, NW, Washington, D.C.  20530-0001.  (**See** **Attachment B.**)

7.)  In a second letter dated December 7, 2007, EOUSA acknowledged receipt of Plaintiff's request and advised that it had split the request into 16 separate requests[2] representing each district in which a search was to be conducted for responsive records.  EOUSA issued a

---

[1]  These states include the United States Attorneys Offices in the following districts: the Central, Eastern, Southern and Northern Districts of California ("CDCA, EDCA, SDCA, and NDCA"); the Northern and Southern Districts of Indiana ("NDIN and SDIN"), the Eastern, Western and Middle Districts of Louisiana ("EDLA, WDLA, and MDLA"), the District of New Jersey ("DNJ"), the Northern, Southern and Middle Districts of Florida ("NDFL, SDFL, and MDFL"), the District of Nevada ("DNV"), and the District of Columbia ("DDC").

[2]  EOUSA's letter inadvertently advised Plaintiff that it had opened 16 separate requests, when in fact, 19 separate requests were opened in response to Plaintiff's November 29, 2007, FOIA request.

separate acknowledgment letter for each district, copies of which are not attached hereto.  This

letter also advised Plaintiff that by making the request it had agreed to pay fees up to $25 pursuant

to 28 C.F.R. § 16.3(c), that the processing fees would be aggregated, and that if processing fees

exceeded $25, EOUSA would notify it of the estimated fee amount.  **(See Attachment C.)**

8.)  In 19 separate letters dated December 7, 2007, EOUSA advised Plaintiff of

the following tracking numbers for each of its separate requests: 07-4138 (Director's Office)[3]; 07-

4120 (Legal Programs); 07-4121 (General Counsel); 07-4122 (NDCA); 07-4123 (CDCA); 07-

4124 (SDCA); 07-4125 (EDCA); 07-4126 (DDC); 07-4127 (NDIN); 07-4128 (SDIN); 07-4129

(EDLA); 07-4130 (MDLA); 07-4131 (WDLA); 07-4132 (DNJ); 07-4133 (NDFL); 07-4134

(MDFL); 07-4135 (SDFL); 07-4136 (DNV); and 07-4137 (Item 5 of the request).[4]  **(See id.)**

9.)  This declaration will further address only the EOUSA's handling of the

requests that are the subject of this lawsuit, namely, 07-4122 (NDCA), 07-4123 (CDCA), 07-

4126 (DDC), 07-4127 (NDIN), 07-4129 (EDLA), 07-4130 (MDLA), 07-4132 (DNJ), 07-4135

(SDFL), 07-4136 (DNV), and 07-4137 (Third party cases).

10.)  On November 3, 2008, Defendant filed a Scheduling Report, which the

Court approved on November 20, 2008.  In this filing, Defendant set forth the following search

parameters and/or actions to be taken or already taken with regard to each item of Plaintiff's

request:

---

[3]  This request included a search of the EOUSA's Director's Office and the Attorney
General Advisory Committee (AGAC) office.

[4]  This letter also advised Plaintiff that these offices and districts would only search for
records responsive to items 1 through 4 of its request.  EOUSA also advised Plaintiff that item 5
of it's request would be handled separately in request number 07-4137.  See Attachment C.

**Item 1**: Searches will be completed for "mobile phone location information for law enforcement purposes . . . dated on or after September 12, 2001."

**Item 2**: By letter dated August 22, 2008, the Criminal Division released in part an e-mail message that Defendant determined is the only record responsive to this item of the request.

**Item 4**: Searches will be completed for any records that set forth a compilation showing "the number of times the government has applied for a court order based on less than probable cause, authorizing it to obtain mobile phone location information, and whether such applications were successful."

**Items 3 and 5**: Searches will be conducted by canvassing each Assistant United States Attorney currently employed in the Criminal Division of any USAO that is the subject of this civil action to determine if they had any knowledge of (1) any application granted on or after September 12, 2001, to permit the government to obtain information from mobile carriers about where an individual's cell phone was (or is) located where no judicial determination of probable cause was made; (2) the name of any individual prosecuted after any such application was granted; (3) any application granted since November 16, 2007, to permit the government to obtain "GPS or similarly precise location data on target cell phones from mobile carriers where no judicial determination of probable cause was made; and (4) the name and docket number for any individual prosecuted after any such application was granted.

(**See** Attachment D.)

## EOUSA'S RESPONSES

### United States Attorney's Office for the Northern District of California  07-4122

11.)  By letter dated October 15, 2008, the EOUSA responded to Item 1 of Plaintiff's request, number 07-4122 (NDCA), and released 18 pages in full and 25 pages in part. The EOUSA withheld certain information pursuant to FOIA exemptions (b)(2) and (b)(7)(E), 5 U.S.C. §§ 552(b)(2) & (b)(7)(E), and Privacy Act exemption (j)(2).  In this letter EOUSA also advised Plaintiff of its administrative appeal rights.  (**See** Attachment E.)

12.)  In a letter dated December 31, 2008, the EOUSA responded to Plaintiff's request with regard to Items 3- 5 advising that with regard to Items 3 & 4, the United States

Attorney's Office ("USAO") NDCA did not locate any responsive information. With regard to Item 5, the EOUSA advised Plaintiff that the USAO NDCA identified 40 cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause, and that there were no applications granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause. For the cases identified in response to Item 5 of the request, EOUSA advised Plaintiff that it was withholding in full all of the responsive information pursuant to FOIA exemptions (b)(7)(A) and (b)(7)(C), 5 U.S.C. §§ 552(b)(7)(A) and (b)(7)(C), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2). EOUSA further advised that the certain identified cases are also the subject of sealing orders that prohibit disclosure. Finally, EOUSA also advised Plaintiff of its administrative appeal rights. **(See Attachment F.)**

### United States Attorney's Office for the Central District of California  07-4123

13.)  In a letter dated September 8, 2008, EOUSA advised Plaintiff that in response to Items 1-4 of its request, 13 pages of material were being released in full, 1 page was being released in part and 160 pages were being withheld in full. EOUSA also advised that certain information was being withheld pursuant to 5 U.S.C. §§ 552(b)(5), (b)(7)(C), and (b)(7)(E), and 5 U.S.C. § 552a(j)(2). Finally, EOUSA advised Plaintiff of its administrative appeal rights. **(See Attachment G.)**

14.)  In a letter dated September 16, 2008, EOUSA made a second interim reply to Plaintiff and advised that with regard to Item 1 of its request, 22 pages of responsive material were being released in full. EOUSA also advised Plaintiff of its administrative appeal rights.

**(See Attachment H.)**

15.)  By letter dated October 9, 2008, with regard to Item 1 of Plaintiff's request, EOUSA made a third interim release of 58 pages in full and 28 pages in part.  EOUSA advised Plaintiff that it withheld information pursuant to FOIA exemption (b)(7)(E), 5 U.S.C. § 552(b)(7)(E), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2).  EOUSA also advised Plaintiff of its administrative appeal rights.  **(See Attachment I.)**

16.)  EOUSA made a fourth interim response to Plaintiff in a letter dated October 15, 2008, with regard to Item 1 of its request and released in full 9 pages of material.  EOUSA also advised Plaintiff of its administrative appeal rights.  **(See Attachment J.)**

17.)  In a final response to Plaintiff dated December 31, 2008, EOUSA advised that with regard to Items 3 & 4, the USAO CDCA did not locate any responsive information.  With regard to Item 5, the EOUSA advised Plaintiff that the USAO CDCA identified 23 cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause, and that one of these cases did not result in a federal prosecution.  In addition, the USAO CDCA determined that there were no applications granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause.  For the cases identified in response to Item 5 of the request, EOUSA advised Plaintiff that it was withholding in full all of the responsive information pursuant to FOIA exemptions (b)(7)(A) and (b)(7)(C), 5 U.S.C. §§ 552(b)(7)(A) and (b)(7)(C), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2).  In this letter, EOUSA also advised Plaintiff of its administrative appeal rights.  **(See Attachment K.)**

18.)  In a letter dated November 6, 2008, EOUSA advised Plaintiff that in response to Item 1 of its request, 47 pages of material were being released in full, 12 pages were being released in part and 7 pages were being withheld in full.  EOUSA also advised that certain information was being withheld  pursuant to 5 U.S.C. §§ 552(b)(5), (b)(7)(C), and (b)(7)(E), and 5 U.S.C. § 552a(j)(2).  In addition, EOUSA advised Plaintiff that one of the documents being released was the 11-page Order and Memorandum Opinion of United States District Court Judge Thomas F. Hogan dated August 25, 2006, which contained redactions made by the Court and not by EOUSA.  In this letter, EOUSA advised Plaintiff that it referred to the U.S. Department of Justice, Criminal Division, 44 pages of material that originated there for review and direct response.  Finally, EOUSA advised Plaintiff of its administrative appeal rights.  **(See Attachment L.)**

19.)  In a final response dated December 31, 2008, EOUSA advised that with regard to Items 3 and 4, the USAO DDC did not locate any responsive information.  With regard to Item 5, the EOUSA advised Plaintiff that the USAO DDC identified 21 cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause, and that the USAO DDC determined that there were no applications granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause.  For the cases identified in response to Item 5 of the request, EOUSA advised Plaintiff that it was withholding in full all of the responsive information pursuant to FOIA exemptions (b)(3), F.R.C.P. 6(e), (b)(7)(A), (b)(7)(C),

and (b)(7)(E), 5 U.S.C. §§ 552(b)(3), (b)(7)(A), (b)(7)(C), (b)(7)(E), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2).  EOUSA also advised that it was releasing in part 9 pages of material responsive to Item 1 of Plaintiff's request.  In this letter, EOUSA also advised Plaintiff of its administrative appeal rights.  **(See Attachment M.)**

### United States Attorney's Office for the Northern District of Indiana  07-4127

20.)  In a letter dated September 16, 2008, EOUSA advised Plaintiff that in response to Item 1 of its request, 14 pages of material were being released in full, 3 pages were being released in part, and 26 pages were being withheld in full.  EOUSA also advised that certain information was being withheld  pursuant to 5 U.S.C. §§ 552(b)(5) and (b)(7)(C), and 5 U.S.C.

§ 552a(j)(2).  Finally, EOUSA advised Plaintiff of its administrative appeal rights.  **(See Attachment N.)**

21.)  In a final response dated December 31, 2008, EOUSA advised that with regard to Items 3 and 4, the USAO NDIN did not locate any responsive information.  With regard to Item 5, the EOUSA advised Plaintiff that the USAO NDIN identified 2 cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause; however, none of these cases resulted in federal prosecutions.  In addition, the USAO NDIN determined that there were no applications granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause.  For the cases identified in response to Item 5 of the request, EOUSA advised Plaintiff that it was withholding in full all of the responsive information

pursuant to FOIA exemption (b)(7)(C), 5 U.S.C. § 552(b)(7)(C), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2). In this letter, EOUSA also advised Plaintiff of its administrative appeal rights. **(See Attachment O.)**

### United States Attorney's Office for the Eastern District of Louisiana  07-4129

22.) In a letter dated June 19, 2008, EOUSA advised Plaintiff that in response to Items 1-4 of its request, the USAO EDLA located no responsive records. In this letter EOUSA advised Plaintiff of its administrative appeal rights. **(See Attachment P.)**

23.) Plaintiff filed an administrative appeal from EOUSA's "no records" response by letter dated July 22, 2008. **(See Attachment Q.)**

24.) By letter dated July 30, 2008, OIP acknowledged receipt of Plaintiff's appeal and assigned it appeal number 08-2354. **(See Attachment R.)**

25.) OIP affirmed EOUSA's "no records" response in a letter dated October 30, 2008. **(See Attachment S.)**

26.) In response to Items 1 & 2 of Plaintiff's request, EOUSA made a supplemental release of 45 pages in full, 1 page in part and withheld 5 pages in full by letter dated November 25, 2008. EOUSA withheld certain information pursuant to FOIA exemptions (b)(5), 5 U.S.C. § 552(b)(5), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2). EOUSA advised that it was also asserting Exemption 5 on behalf of the Justice Department's Criminal Division to withhold information. In this letter, EOUSA also advised Plaintiff of its administrative appeal rights. **(See Attachment T.)**

27.) In a final response dated January 7, 2009, EOUSA advised that with regard to Items 3 & 4, the USAO EDLA did not locate any responsive information. With regard to Item

5, the EOUSA advised Plaintiff that the USAO EDLA identified 2 cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause, and determined that there were no applications granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause. For the cases identified in response to Item 5 of the request, EOUSA advised Plaintiff that it was withholding in full all of the responsive information pursuant to FOIA Exemptions (b)(7)(C), 5 U.S.C. § 552(b)(7)(C), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2). In this letter, EOUSA also advised Plaintiff of its administrative appeal rights. **(See Attachment U.)**

### United States Attorney's Office for the Middle District of Louisiana  07-4130

28.) In a letter dated August 12, 2008, EOUSA advised plaintiff that it was releasing 37 pages of material in full and 2 pages of material in part. EOUSA advised that it withheld information pursuant to FOIA Exemptions (b)(5) and (b)(7)(E), 5 U.S.C. §§ 552(b)(5) and (b)(7)(E), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2). **(See Attachment V.)**

29.) In a second interim reply dated September 4, 2008, EOUSA advised Plaintiff that in response to Item 1 of its request, 1 page was being released in part and 153 pages were being withheld in full. EOUSA also advised that certain information was being withheld pursuant to 5 U.S.C. §§ 552(b)(5), (b)(7)(C), and (b)(7)(E), and 5 U.S.C. § 552a(j)(2). EOUSA also advised that it was withholding information on behalf of the Justice Department's Criminal Division pursuant to Exemption 5. Finally, EOUSA advised Plaintiff of its administrative appeal rights. **(See Attachment W.)**

30.)  In a third interim reply dated September 16, 2008, EOUSA advised that in response to Item 1 of its request, it was releasing 63 pages in full and withholding 4 pages in full pursuant to FOIA Exemptions (b)(5) and (b)(7)(C), 5 U.S.C. §§ 552(b)(5) and (b)(7)(C), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2).  In this letter, EOUSA advised that it was also asserting these FOIA exemptions on behalf of the United States Marshals Service (USMS) to withhold information that originated there.  (**See** **Attachment X.**)

31.)  In a final reply dated December 31, 2008, EOUSA advised that with regard to Items 3 & 4, the USAO MDLA did not locate any responsive information.  With regard to Item 5, the EOUSA advised Plaintiff that the USAO MDLA identified 7 cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause.  In addition, the USAO MDLA determined that there were no applications granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause.  For the cases identified in response to Item 5 of the request, EOUSA advised Plaintiff that it was withholding in full all of the responsive information pursuant to FOIA Exemptions (b)(7)(A), (b)(7)(C), 5 U.S.C. §§ 552(b)(7)(A) and (b)(7)(C), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2).  In this letter, EOUSA also advised Plaintiff that certain responsive records were also subject to court sealing orders that prohibit disclosure.  Finally, EOUSA advised Plaintiff of its administrative appeal rights.  (**See** **Attachment Y)**

32.)  By letter dated May 14, 2009, EOUSA made a supplemental release of 27 pages in full, 43 pages in part and withheld 1 page in full.  The EOUSA withheld certain

information pursuant to FOIA exemptions (b)(2), (b)(7)(E), 5 U.S.C. §§ 552(b)(2) and (b)(7)(E), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2). In this letter, EOUSA also advised Plaintiff of its administrative appeal rights. (**See Attachment Z.**)

**United States Attorney's Office for the District of New Jersey 07-4132**

33.) In a letter dated June 19, 2008, EOUSA advised Plaintiff that in response to Items 1-4 of its request, the USAO DNJ located no responsive records. In this letter EOUSA advised Plaintiff of its administrative appeal rights. (**See Attachment AA.**)

34.) Plaintiff filed an administrative appeal from EOUSA's "no records" response by letter dated July 22, 2008. (**See Attachment BB.**)

35.) By letter dated July 30, 2008, OIP acknowledged receipt of Plaintiff's appeal and assigned it appeal number 08-2355. (**See Attachment CC.**)

36.) OIP affirmed EOUSA's "no records" response in a letter dated September 22, 2008. (**See Attachment DD.**)

37.) In response to Item 1 of Plaintiff's request, EOUSA made a supplemental release by letter dated October 15, 2008, of 1 page in full, 1 page in part, and withheld 30 pages in full pursuant to FOIA exemptions (b)(5), (b)(7)(C), and (b)(7)(E), 5 U.S.C. §§ 552(b)(5), (b)(7)(C), and (b)(7)(E), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2). EOUSA also advised Plaintiff of its administrative appeal rights. (**See Attachment EE.**)

38.) EOUSA made a second supplemental release by letter dated November 24, 2008, and released 1 page in part and withheld 31 pages in full pursuant to (b)(5) and (b)(7)(F), 5 U.S.C. §§ 552(b)(5) and (b)(7)(F)[5], and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2).

_____

[5] FOIA exemption (b)(7)(F) was inadvertently cited in this letter. EOUSA advised Plaintiff of this error in its final response letter dated December 31, 2008, see infra ¶ 39, and

EOUSA advised that it was also asserting Exemption (b)(5) on behalf of the Justice Department's Criminal Division to withhold information.  **(See Attachment FF.)**

39.)  In a final response dated December 31, 2008, EOUSA advised that with regard to Items 3 & 4, the USAO DNJ did not locate any responsive information..  With regard to Item 5, the EOUSA advised Plaintiff that the USAO DNJ identified 79 cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause, and that 66 of these cases resulted in federal prosecutions.  The USAO DNJ also determined that there were 19 applications granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause, and that 17 cases resulted in federal prosecutions.  For the cases identified in response to Item 5 of the request, EOUSA advised Plaintiff that it was withholding in full all of the responsive information pursuant to FOIA exemptions (b)(7)(A) and (b)(7)(C), 5 U.S.C. §§ 552(b)(7)(A) & (b)(7)(C), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2).  EOUSA further advised that two of the identified cases are also the subject of sealing orders that prohibit disclosure.  In this letter, EOUSA also advised Plaintiff that in its November 24, 2008, response letter exemption 7(F) had been inadvertently cited instead of exemption 7(E).  Finally, EOUSA advised Plaintiff of its administrative appeal rights.  **(See Attachment GG.)**

### United States Attorney's Office for the Southern District of Florida  07-4135

40.)  In a letter dated May 28, 2008, EOUSA advised Plaintiff that in response to Items 1-4 of its request, the USAO SDFL located no responsive records.  In this letter EOUSA

---

explained that it intended to assert exemption (b)(7)(E) to withhold certain information in full. (See also Attachment FF.)

advised Plaintiff of its administrative appeal rights.  (**See** **Attachment HH.**)

41.)  Plaintiff filed an administrative appeal from EOUSA's "no records" response by letter dated July 22, 2008.  (**See** **Attachment II.**)

42.)  By letter dated July 30, 2008, OIP acknowledged receipt of Plaintiff's appeal and assigned it appeal number 08-2356.  (**See** **Attachment JJ.**)

44.)  OIP affirmed EOUSA's "no records" response in a letter dated September 11, 2008.  (**See** **Attachment KK.**)

45.)  In a final response dated December 31, 2008, EOUSA advised that with regard to Items 3 & 4, the USAO SDFL did not locate any responsive information.  With regard to Item 5, the EOUSA advised Plaintiff that the USAO SDFL identified 57 cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause, and determined that there were 6 applications granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause.  For the cases identified in response to Item 5 of the request, EOUSA advised Plaintiff that it was withholding in full all of the responsive information pursuant to FOIA exemptions (b)(7)(A) and (b)(7)(C), 5 U.S.C. §§ 552(b)(7)(A) & (b)(7)(C), and Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2).  EOUSA further advised that the identified cases are also the subject of sealing orders that prohibit disclosure.  In this letter, EOUSA also advised Plaintiff of its administrative appeal rights.  (**See** **Attachment LL.**)

## United States Attorney's Office for the District of Nevada  07-4136

46.)  In a letter dated January 24, 2008, EOUSA denied Plaintiff's request for a fee waiver or reduction and advised that the USAO DNV had determined that to complete a

search for responsive records would require 10 additional hours of search time, excluding the 2 hours of free search time to which it was entitled. EOUSA advised that the estimated search fee was approximately $280, and that duplication costs of $.10 per page would be assessed after the first 100 pages of free duplication. EOUSA requested that Plaintiff submit an advance payment of $280. Finally, EOUSA advised Plaintiff of its administrative appeal rights. **(See Attachment MM.)**

47.) Plaintiff filed an administrative appeal from EOUSA's denial of its request for a fee waiver or reduction by letter dated March 12, 2008. **(See Attachment NN (w/o enclosures).)**

48.) By letter dated March 18, 2008, OIP acknowledged receipt of Plaintiff's appeal and assigned it appeal number 08-1206. **(See Attachment OO.)**

49.) By letter dated October 15, 2008, OIP advised Plaintiff that EOUSA confirmed that fees were no longer at issue because EOUSA had moved forward with processing the request, which rendered its appeal moot. **(See Attachment PP.)**

50.) In a final response dated December 31, 2008, EOUSA advised that with regard to Items 3 & 4, the USAO DNV did not locate any responsive information. With regard to Item 5, the EOUSA advised Plaintiff that the USAO DNV identified 2 cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause, and determined that there were no applications granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause. For the cases identified in response to Item 5 of the request, EOUSA advised Plaintiff that it was withholding in full all of the responsive information

pursuant to FOIA exemptions (b)(7)(A) and (b)(7)(C), 5 U.S.C. §§ 552(b)(7)(A) & (b)(7)(C), and

Privacy Act exemption (j)(2), 5 U.S.C. § 552a(j)(2).  EOUSA further advised that the identified

cases are also the subject of sealing orders that prohibit disclosure.  In this letter, EOUSA also

advised Plaintiff of its administrative appeal rights.  (**See** **Attachment QQ.**)

**Request Number 07-4137 (Third Party Case Information)**

51.)  In response to Item 5 of Plaintiff's request EOUSA denied access to the

requested information in a letter dated December 12, 2007, pursuant to FOIA exemptions (b)(6)

and (b)(7)(C), 5 U.S.C. §§ 552(b)(6) and (b)(7)(C), and Privacy Act exemption (j)(2), 5 U.S.C.

§ 552a(j)(2).  (**See** **Attachment RR.**)

52.)  Plaintiff filed an administrative appeal from EOUSA's denial of access to

the information requested in Item 5 of its request by letter dated February 6, 2008.  (**See**

**Attachment SS.**)

53.)  By letter dated February 14, 2008, OIP acknowledged receipt of Plaintiff's

appeal and assigned it appeal number 08-0946.  (**See** **Attachment TT.**)

54.)  By letter dated August 4, 2008, OIP advised Plaintiff that in light of the

filing of its lawsuit pertaining to this request, it was closing appeal file number 08-0946, in

accordance with 28 C.F.R. § 16.9(a)(3).  (**See** **Attachment UU.**)

**CRIMINAL DIVISION REFERRALS**

55.)  As a result of searching for information responsive to Plaintiff's request, the

USAOs located documents and electronic communications that originated in the Criminal

Division of the U.S. Department of Justice.  Accordingly, pursuant to the Justice Department's

FOIA regulations, 28 C.F.R. § 16.4(c), the EOUSA made four referrals of material to the

Criminal Division in requests numbered 07-4126 (DDC), 07-4129 (EDLA), 07-4130 (MDLA), and 07-4132 (DNJ).

56.) With regard to EOUSA's referrals, the Criminal Division made the following release determinations:

07-4126: By letter dated May 15, 2009, the Criminal Division advised Plaintiff that it was releasing in full 2 pages of the referred material that it had determined were responsive to its request. (**See AttachmentVV.**)

07-4129: By letter dated November 25, 2008, EOUSA advised Plaintiff that it was asserting Exemption 5 on behalf of the Criminal Division to withhold in full information that originated there. (**See Attachment T.**)

07-4130: By letter dated August 22, 2008, the Criminal Division advised Plaintiff that it was releasing in part 6 of 8 referred records and withholding in full the remaining 2 referred records pursuant to Exemptions 2 and 5, 5 U.S.C. §§ 552(b)(2) & (b)(5) (deliberative process and attorney work product privileges). (**See Attachment WW.**)

07-4132: By letter dated November 24, 2008, EOUSA advised Plaintiff that it was asserting Exemption 5 on behalf of the Criminal Division to withhold in full information that originated there. (**See Attachment FF.**)

**EOUSA'S DISCLOSURE DETERMINATION
JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA**

**EXEMPTION 5 U.S.C. § 552(b)(2)
PURELY INTERNAL PERSONNEL PRACTICES AND PROCEDURES**

57.) Exemption (b)(2) exempts from mandatory disclosure documents or portions of documents "related solely to the internal personnel rules and practices of an agency." This exemption encompasses two distinct categories of information: (a) internal matters of a relatively trivial nature ("low 2"); and, (b) more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement ("high 2").

58.) EOUSA used Exemption 2 (high) in conjunction with Exemption 7E to

protect internal techniques and procedures for law enforcement investigations and prosecutions because the release of these techniques and procedures would risk circumvention of the law. The information withheld under these exemptions are used by the USAOs and law enforcement personnel for predominantly internal purposes. Disclosure of this information could impede the usefulness of the USAO's internal practices and procedures, as well as nullify the effectiveness of law enforcement techniques used in detecting criminal activity and in locating fugitives.

59.) Specifically, EOUSA has asserted Exemption (b)(2) (high) in conjunction with Exemption (b)(7)(E) to protect the details associated with the geographic and physical limitations of a caller identification feature and of a Global Positioning System ("GPS") feature, the conditions under which a subject's cell phone activity will be captured, the availability of GPS capabilities and ways in which it can be activated, the conditions under which cell site information will not be collected, and the ways in which co-conspirators can be identified by using information related to a target's cell phone activity.

60.) The release of these techniques would equip lawbreakers with information that would allow them to take evasive actions in order to avoid detection, to destroy or tamper with evidence, and to coordinate false exculpatories. Clearly, individuals involved in criminal activity could use this information to circumvent the law. For these reasons, EOUSA has asserted Exemption (b)(2) (high) in conjunction with Exemption (b)(7)(E) to withhold this information in the following documents listed in Attachment YY: 2, 69, 71.

61.) In addition, the Criminal Division has asserted Exemption (b)(2)(high) for the following information: Item 1 - to remove two separate e-mail addresses; Item 3 - to remove two separate e-mail addresses; Item 4 - to remove two separate e-mail addresses and a staff telephone number; Item 5 - to remove two separate e-mail addresses and a staff telephone

number.

Both the telephone number and the e-mail addresses clearly relate to the internal practices of the Criminal Division and are utilized by Criminal Division staff in performing their official duties in conducting work related tasks and functions. The disclosure of the telephone number could subject the staff member to harassing telephone calls related to the subject of this request which could disrupt official business. The release of the internal e-mail addresses could also lead to disruptions of official business as these e-mails addresses were developed for the use of staff in the Criminal Divisions's Computer Crime and Intellectual Property Section for handling matters assigned to that Section. Unsolicited contact may result in a significant diversion of staff members' time and focus from their assigned responsibilities. Particularly in light of the ease with which a single person can disseminate e-mails simultaneously to vast numbers of individuals, or to send vast numbers of e-mails to a single individual with the press of a button, the disruptive effects of e-mail are both quantitatively and qualitatively greater than of even telephone calls. Such contacts could seriously impair the staff members ability to fulfill their statutorily mandated functions. For these reasons, the Criminal Division has asserted Exemption (b)(2) (high) to withhold this information in the following documents listed in Attachment YY: 72.


## EXEMPTION 5 U.S.C. § 552(b)(3)
## OTHER FEDERAL NONDISCLOSURE STATUTES

62.) Exemption (b)(3) incorporates various nondisclosure provisions that are contained in other federal statutes. For a statute to support withholding information under this exemption, the statute either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding

or refers to particular types of matters to be withheld."

63.) EOUSA has invoked Exemption 3, Federal Rule of Criminal Procedure 6(e), to withhold information that may reveal the scope and direction of a grand jury proceeding.

**FEDERAL RULE OF CRIMINAL PROCEDURE 6(e)**

64.) Federal Rule of Criminal Procedure ("FRCP") 6(e) regulates disclosure of matters occurring before a grand jury. In order for a Federal Rule of Procedure to qualify as "a statute" it must have been affirmatively enacted into law by Congress. Rule 6(e) has been held to meet this "statute" requirement, since it was affirmatively enacted by Congress in 1977. Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of the form in which the material is substantively contained. Such material encompasses not only the direct revelation of grand jury transcripts, but also the disclosure of information that would reveal the identities of witnesses or jurors, the substance of the testimony given before the grand jury, the strategy or direction of the investigation, the deliberations or questions of the grand jurors, and any other matter, the disclosure of which would suggest a specific act, thought, or focus of the grand jury's deliberations. EOUSA applied Rule 6(e) in conjunction with Exemption 3 to withhold information that was presented in grand jury proceedings.

65.) EOUSA withheld certain records pursuant to FRCP 6(e) and Exemption 3 because release of grand jury information would reveal the scope of the grand jury proceeding and the direction of the investigation by providing the identities of the targets of the investigation, the source of the evidence, as well as the actual evidence produced before the grand jury. Release of this information would provide the requester with the scope of the grand jury's investigation by setting forth where the government sought to find evidence to develop its case, how the government developed its case, and who the government relied upon to develop the elements of

21

crimes.  EOUSA has asserted Exemption 3, FRCP 6(e) for all grand jury materials.

## EXEMPTION 5 U.S.C. § 552(b)(5)
## PRIVILEGED INFORMATION

66.)  Exemption (b)(5) protects "inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  The courts have construed this language to exempt those documents that are normally privileged in the civil discovery context.

67.)  EOUSA asserted Exemption 5 to protect: (1) draft application and order templates, draft memorandum of points and authorities, and draft affidavits; (2) draft correspondence; (3) internal electronic communications between employees of the USAOs regarding the appropriate procedure for obtaining cell site/location information, and the legal standard/authority for obtaining court approval; (3) internal electronic communications between employees of the USAOs and other federal agency personnel regarding the appropriate procedure for obtaining cell site/location information, and the legal standard/authority for obtaining court approval; and (4) internal electronic communications between employees of the USAOs and employees of the Department of Justice, Criminal Division regarding the appropriate procedure for obtaining cell site/location information, and the legal standard/authority for obtaining court approval all pursuant to the attorney work product, attorney client, and the deliberative process privileges.  EOUSA asserted Exemption 5 in conjunction with these privileges in the following documents listed in Attachment YY: 4-24, 30, 31, 35, 36, 38-67, 72.

68.)  EOUSA invoked the attorney work product privilege to protect records or portions of records that reflect such matters as legal strategy, interpretations, and personal evaluations and opinions pertinent to the procedures for obtaining cell site/location information

22

pursuant to a court order. Some of the relevant records were prepared by or at the request or direction of an AUSA, in anticipation of or during litigation. The substance of the records withheld in part or in their entirety are exempt from disclosure pursuant to this privilege because they would reveal the details of an AUSA's legal strategy and mental impressions regarding the appropriate procedure for obtaining evidence of criminal activity for prosecution through cell site/location information. EOUSA has asserted Exemption 5 in conjunction with the attorney work product privilege in the following document listed in Attachment YY: 67.

   69.) In addition, some of these same records contain pre-decisional and deliberative information related to matters that were being considered by the named USAOs and other federal agencies for criminal action against targets and subjects. To disclose this information would reveal internal deliberations among government personnel, namely, discussions of various litigation issues, alternatives, and strategies. Disclosure would jeopardize the candid and comprehensive discussions that are essential for efficient and effective agency decision-making. EOUSA has asserted Exemption 5, the deliberative process privilege, in the following documents listed in Attachment YY: 4-8, 10-18, 38-43, 45-47, 49, 52, 54-55, 63. EOUSA has asserted Exemption 5 in conjunction with the attorney work product and deliberative processes privileges in the following documents listed in Attachment YY: 9, 19-24, 30, 31, 35, 36, 48, 65, 66.

   70.) Other documents withheld under Exemption 5 also contain the details of attorney client communications regarding the standard of proof needed to obtain a court order to allow the capture of a target's or subject's cell site/location information. For example, these communications contain case-specific scenarios in which a federal law enforcement agent is attempting to uncover criminal activity and seeks advice from an AUSA regarding the procedure

for obtaining the necessary court order.  These communications also contain the AUSA's legal opinion and advice regarding the standard of proof needed under relevant statutes and case law. The communications are also covered by the deliberative process privilege because they reveal internal discussions regarding the proper procedure for obtaining this information by court order. EOUSA asserted Exemption 5 in conjunction with the attorney client and deliberative process privileges in the following documents listed in Attachment YY: 44, 50, 51, 53, 56-62, 64, 72. EOUSA also asserted Exemption 5 in conjunction with the attorney client and deliberative process privileges on behalf of the Justice Department's Criminal Division in these same documents, and on behalf of the United States Marshals Service in document 51 which are listed in Attachment YY.

## EXEMPTION 7 THRESHOLD

71.)  Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that the production of such law enforcement records or information would result in one of the six specified types of harm enumerated in the sub-parts of the exemption.  Exemption 7 protections are potentially available to all "records or information compiled for law enforcement purposes."  The focus of Exemption 7's threshold is on the purpose for which information contained in the record has been generated, that is, on the content and compilation purpose of each item of information involved, regardless of the overall character of the record in which the information is maintained.

72.)  The "law" to be enforced within the meaning of Exemption 7 includes both civil and criminal statutes, as well as those statutes authorizing administrative and regulatory proceedings.  Moreover, courts have recognized that "law enforcement" within the meaning of Exemption 7 extends into the realms of national security and homeland security-related

government activities.

73.) Exemption 7 applies to records or information compiled for law enforcement purposes even if the matter does not result in an actual administrative, civil, or criminal enforcement. However, courts have distinguished between mere supervision or monitoring, which would not be considered a valid law enforcement matter under this exemption, and investigations for law enforcement purposes. Furthermore, Exemption 7's protections are only available if an agency has authority to pursue a particular law enforcement matter. Generally, courts have accorded the government deference when considering whether the records of criminal law enforcement agencies meet the threshold requirement of Exemption 7. In this case, the responsive records were all compiled during the conduct of a criminal investigation(s) and/or prosecution(s) by federal, state, and local criminal law enforcement agencies and/or by the USAOs; and therefore, were compiled for law enforcement purposes.

## EXEMPTION 5 U.S.C. § 552(b)(7)(A)
## PENDING LAW ENFORCEMENT PROCEEDINGS

74.) 5 U.S.C. § 552(b)(7)(A) exempts from disclosure:

    records or information compiled for law enforcement purposes,
    but only to the extent that the production of such law
    enforcement records or information . . . could reasonably be
    expected to interfere with enforcement proceedings . . . .

75.) Application of this exemption requires: the existence of law enforcement records;[6] a pending or prospective law enforcement proceeding;[7] and a determination that release

---

[6] See ¶ 76, infra.

[7] See ¶ 77, infra.

of the information could reasonably be expected to interfere with the enforcement proceeding.[8]

Further, in applying this exemption to the documents in question, <u>Bevis v. U.S. Department of State</u>, 801 F.2d 1386, 1389 (D.C. Cir. 1986), imposes a three-part procedure. The government is required to review each document withheld on a document-by-document basis; to group the documents into functional categories and to describe the categories; and, to explain why release of each category could reasonably be expected to interfere with pending law enforcement proceedings. Paragraphs 76-80 contain an explanation of the application of all of the requirements discussed in this paragraph.

### Law Enforcement Records

76.) The responsive records in this case relate to the criminal investigation and prosecution of third party individuals for violations of a variety of federal laws, including for example narcotics and kidnapping laws. Some of the responsive records pertain to fugitive investigations. The bulk of the responsive material consists of sealed applications and orders filed by the government to obtain cell site/location information in specific, pending criminal investigations/prosecutions.

### Pending Law Enforcement Proceedings

77.) The following USAOs have advised that some of the third party cases that were identified in searches for records responsive to Plaintiff's request are open and pending in their districts: the NDCA, CDCA, DDC, MDLA, DNJ, SDFL, and the DNV.[9] These pending

---

[8] <u>See</u> ¶¶ 78-80, <u>infra</u>.

[9] In response to Item 5 of Plaintiff's request, EOUSA is asserting Exemption 7(A) to protect records associated with the open cases identified in the following districts: NDCA, CDCA, DDC, MDLA, DNJ, SDFL.

cases include matters before the Grand Jury and others are cases awaiting trial and/or sentencing.

<div align="center">**Reasonable Expectation of Interference**</div>

78.)  In processing requests under the FOIA, the EOUSA has established procedures allowing it to implement the FOIA as efficiently as possible.  When a request is received for records related to an ongoing investigation or prosecution, or for records related to a criminal case that is currently on direct appeal or the subject of a pending § 2255 petition, the EOUSA commonly asserts Exemption (b)(7)(A) in response to that request.  However, in many cases, the EOUSA processes the request and attempts to release information contained within the prosecution file when it has determined that such a release would not jeopardize future investigative or prosecutive efforts.  The EOUSA's review of records responsive to Item 1 of the request revealed 7 pages consisting of an application for cell site information (including an order) that pertain to an open criminal case pending in the USAO DNV.  It was determined that dissemination of any information contained in this material could jeopardize further prosecutive efforts.

79.)  Any release of information from the responsive records could interfere with the Government's case in the event that the defendant is not convicted, or a conviction is overturned on direct appeal.  Accordingly, the release of the withheld material would likely cause harm by revealing the Government's evidence to the public and the focus of its investigation. Once documents are released and are in the public domain detailed information concerning the investigation and prosecution could reach the potential jury pool.  This would allow potential jurors to critically analyze the documents and form opinions pertaining to the investigation and prosecution.  In this regard, the following potential harm from the release of these documents exists:

<div align="center">27</div>

(a) The use of information released to counteract evidence developed by investigators; and

(b) The use of information released by potential jurors to analyze the evidence and to form opinions.

80.) Furthermore, the release of this information to third parties not directly involved in this matter could allow these third parties to interfere with any future prosecution by harassing or intimidating witnesses, and creating false evidence to contradict facts discussed during the investigation.

## CATEGORIES OF INFORMATION

81.) The responsive record withheld pursuant to Exemption (b)(7)(A) has been reviewed and categorized for the purpose of this declaration in terms of information contained therein.

82.) The document withheld in its entirety was located in the USAO DNV. The information contained in the document falls into the category of Attorney Work Product and the category of law enforcement information pertaining to third party individuals. This material includes a sealed application and a sealed court order to obtain historical cell site information in a criminal investigation involving death threats made against a federal employee.

83.) This material is clearly exempt from disclosure pursuant to Exemptions 5, 7(A), and 7(C). There is no reasonably segregable portion of any document which could be released. EOUSA asserted Exemption 7A to withhold in full document numbered 67 listed in Attachment YY.

84.) Under the same rationale, EOUSA is also asserting Exemption 7A to protect the applications, orders, affidavits, and service provider orders related to the cases identified by

the USAO NDCA, USAO CDCA, USAO DDC, USAO MDLA, USAO DNJ, and the USAO

SDFL after the searches that were conducted for information responsive to Item 5 of the request.

## FOIA EXEMPTION (b)(7)(C)
## UNWARRANTED INVASION OF PERSONAL PRIVACY

85.)  5 U.S.C. § 552(b)(7)(C) exempts from disclosure:

"records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."

86.)  All of the information at issue in this case was compiled by the named

USAOs for the criminal investigation and prosecution of third party individuals for violations of

various federal laws.  Accordingly, this information was compiled for law enforcement purposes.

87.)  When withholding information pursuant to this exemption, EOUSA is

required to balance the privacy interests of the individuals mentioned in these records against any

public interest in disclosure.  In asserting this exemption, the information was examined to

determine the degree and nature of the privacy interest of every individual whose name and/or

identifying data appears in these records.  The public interest in disclosure of this information is

determined by whether the information in question would inform Plaintiff and the general public

about the USAO's and other federal law enforcement agencies' performance of their mission to

enforce federal criminal statutes and/or how the USAO and other federal agencies actually

conduct internal operations and investigations.  In each instance where information was withheld,

it was determined that individual privacy interests were not outweighed by any public interest in

disclosure.  To reveal the names and/or identifying data of third party individuals in the context of

a federal criminal investigation could reasonably be expected to cause embarrassment and

humiliation, and thus constitute an unwarranted invasion of personal privacy.

29

88.)  At the time that these records were reviewed, EOUSA considered the passage of time and its effect on the privacy interests of third party individuals in balancing the privacy and the public interests.  It was determined that the privacy interests are as strong and pertinent now as when the records were created, and that there is no public interest in these records which would outweigh the privacy interests of these individuals.

89.)  EOUSA reviewed the responsive records to determine if any information could be segregated and released without invading the privacy interests of third-party individuals named in these records; however, EOUSA determined that no reasonably segregable information could be released without invading the strong privacy interests of the third-party individuals. EOUSA asserted Exemption (b)(7)(C) in conjunction with Exemption (b)(6) in the following documents listed in Attachment YY:9, 15, 19-24, 29-31, 35-38, 48, 65-67.  EOUSA also invoked Exemptions 7(C) and 6 to withhold third parties' names and identifying information (docket numbers) that is contained in the information responsive to Item 5 of Plaintiff's request.  EOUSA asserted Exemption (b)(7)(C) in conjunction with Exemption (b)(6) on behalf of the United States Marshals Service to protect the name of an employee in the following document listed in Attachment YY: 51.

### Names and/or Identifying Information Pertaining To
### Third Parties of Investigative Interest to the Government

90.)  EOUSA has asserted Exemption (b)(7)(C) to protect the names and identifying personal and non-public information concerning third-party individuals in whom the federal and/or state law enforcement agencies had an investigative interest.  EOUSA is withholding the following personal information about these third-party individuals: name, telephone/cell phone number, cell phone account number, date of birth, home address, driver's

license number, alias name, criminal case number, and business name and address, pursuant to Exemption (b)(7)(C), in conjunction with Exemption (b)(6).

91.) Being linked with any law enforcement investigation carries a strong negative connotation. To release the identities of these individuals to the public as subjects or suspects of a criminal investigation could subject them to harassment or embarrassment, as well as undue public attention. In balancing the privacy interest in this information against the public interest in disclosure, EOUSA found no legitimate public interest in the release of personal, non-public information concerning these individuals who were of investigative interest to the government because it will not shed light on the operations and activities of the government. Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) in the following documents listed in Attachment YY:9, 19-24, 29-31, 35-37, 48, 65-67. EOUSA is also asserting Exemption 6, in conjunction with Exemption (b)(7)(C), to protect the names and identifying information (docket number) pertaining to third parties of investigative interest to the government who are mentioned in the material responsive to Item 5 of Plaintiff's request.

### Names of State and Federal Law Enforcement Personnel

92.) Exemption (b)(7)(C) has been asserted to protect the names of Federal Bureau of Investigation (FBI), Drug Enforcement Administration (DEA), and U.S. Immigration and Customs Enforcement (ICE) Special Agents, a U.S. Marshals Service employee, and state law enforcement personnel, who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in the investigative records. Publicity, adverse or otherwise, regarding any particular investigation conducted by a state or federal law enforcement agents may seriously impair their effectiveness in conducting future investigations. This privacy consideration also protects these agents from unnecessary, unofficial questioning as to the

31

conduct of an investigation, whether or not they are currently employed by the state or federal government. State and federal law enforcement agents conduct official inquiries into violations of various criminal statutes and come into contact with all strata of society and conduct searches and make arrests, both of which result in reasonable, but nonetheless serious disruptions in the lives of individuals. It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge against the agents involved in the investigation. The publicity associated with the release of the identity of a law enforcement agent or employee in connection with a particular investigation could trigger hostility towards the agent by such persons. Balancing this substantial privacy interest against the public interest in disclosure, EOUSA could find no legitimate public interest to be served in the disclosure of the identities of these law enforcement agents and employees in this investigation to the public because it will not shed light on the operations and activities of the federal government. Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) to protect the names of law enforcement personnel in the following documents listed in Attachment YY:20-24, 30, 31, 35, 36, 38, 48, 51, 65-67.

### Names and/or Identifying Information Pertaining To Third Parties Merely Mentioned

93.) Exemption (b)(7)(C) has also been asserted to protect the name, home address, business name/affiliations and address, pertaining to third-party individuals who are only incidentally mentioned in these records. To release the identities of these third parties who are merely mentioned in an investigation would not shed any light on the government's performance of its statutory duties with respect to the investigations. However, the disclosure of their identities could cause unsolicited and unnecessary attention to be focused on these individuals

and/or their family members. The mention of their names in the context of a federal criminal investigation could cast them in an unfavorable or negative light if released to the public. Thus, these individuals have a strong privacy interest in the protection of such personal information. Furthermore, there is no legitimate public interest to be served by releasing the identities of persons who were merely mentioned in the investigations because it will not shed light on the operations and activities of the federal government. Exemption (b)(7)(C) has been cited in conjunction with Exemption (b)(6) to protect the names and above-mentioned identifying information pertaining to third parties merely mentioned in the investigation in the following documents listed in Attachment YY:15, 22-24, 37, 67.

## EXEMPTION 5 U.S.C. § 552(b)(6)
## CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

94.) 5 U.S.C. § 552(b)(6) exempts from disclosure:

personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy.

95.) This exemption has been interpreted broadly to cover all information pertaining to an identifiable individual. EOUSA has categorically applied Exemption (b)(6) in conjunction with Exemption (b)(7)(C) to protect to all information pertaining to third-party individuals because their privacy interests in the information outweighs any public interest in disclosure. The categorical application of this exemption is appropriate because no consent or authorization to release this information was provided to EOUSA in connection with this request, and Plaintiff did not meet its burden of identifying any legitimate public in disclosure. For this reason, EOUSA determined that release of this information would constitute an unwarranted invasion of the personal privacy of third-party individuals that could result in harassment or

embarrassment.[10]  Accordingly, EOUSA has categorically asserted Exemption 6 in conjunction

with Exemption (b)(7)(C) to withhold certain third party information that appears in the following

documents listed in Attachment YY: 9, 15, 19-24, 29-31, 35-37, 48, 51, 65-67.

### EXEMPTION 5 U.S.C. § 552(b)(7)(D)
### CONFIDENTIAL SOURCE MATERIAL

96.)  5 U.S.C. § 552(b)(7)(D)[11] provides protection for:

> records or information compiled for law enforcement purposes, but only to the
> extent that the production of such law enforcement records or information . . .(D)
> could reasonably be expected to disclose the identity of a confidential source,
> including a State, local or foreign agency or authority or any private institution
> which furnished information on a confidential basis and, in the case of a record or
> information compiled by a criminal law enforcement authority in the course of a
> criminal investigation or a by an agency conducting lawful national security
> intelligence investigation, information furnished by a confidential source

97.)  Federal law enforcement agencies have numerous confidential sources who

report in on a regular basis and are considered "informants" within the common meaning of the

term.  EOUSA has asserted this exemption to protect individuals who provided information as

confidential sources during federal criminal investigations of a drug distribution and money

laundering organization, an auto theft ring and in a fugitive investigation by withholding the

information they provided to the government.  Releasing the information that these sources

provided to the government may likely reveal the sources' identities.  The release of a source's

identity would forever eliminate that source as a future means of obtaining information.  In

---

[10]  EOUSA's balancing of the privacy and public interests in determining whether to
withhold third party information under Exemption (b)(7)(C), as set forth in Paragraphs 85-93,
supra, applies equally to the balancing of interests under Exemption 6.

[11]  EOUSA did not assert Exemption 7D in its response letters to Plaintiff; however, upon
re-review of the withheld information, EOUSA had determined that certain information is
exempt pursuant to Exemption 7D.

addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. The release of this information could endanger individual informants, likely making them targets of harassment or other forms of reprisal. Accordingly, it is only with the understanding of complete confidentiality that the aid of such sources can be enlisted, and only through this confidence that these sources can be persuaded to continue providing valuable assistance in the future. For these reasons, EOUSA has withheld the identities of these sources, and the information they provided pursuant to Exemption (b)(7)(D).

98.) Confidentiality can be based on an express assurance of confidentiality or circumstances from which the assurance could reasonably be inferred. Express promises of confidentiality can be supported by notations made on the face of documents indicating that the information in them is to be kept confidential pursuant to an express promise, by statements from the agents or sources involved in which they attest to their personal knowledge of an express promise, by specific agency practices or procedures regarding the routine treatment of confidential sources, including those for "symbol-numbered" sources, or by some combination thereof. Confidentiality can be implied from the nature of the crime and the source's relation to it. A key consideration here is the potential for retaliation by defendants or requesters and the violent or intimidating nature of the crime itself.

99.) In this case, the confidential sources are not named, but instead, are referred to as a Confidential Source ("CS"), Confidential Source of Information ("CS"), and Confidential Informant ("CI"). These sources provided detailed information pertaining to the criminal activities of targeted investigative subjects who were involved in a drug distribution and money laundering organization, an auto theft ring that was operating a "chop shop," and in a fugitive investigation. These sources had direct contact with the subjects of the criminal investigation and

provided details as to their personal lives and criminal conduct. Accordingly, EOUSA has

inferred confidentiality from the following: (1) the confidential sources provided information in a

federal criminal investigation; (2) these confidential sources where not named in the investigatory

material, but were referred to by the designation "CS"; and (3) given the information provided by

these confidential sources it is clear that they were closely connected to the targets/subjects and to

the criminal activity being investigated. EOUSA asserted Exemption 7D in conjunction with

other exemptions in the following documents listed in Attachment YY: 20, 22, 48, 65.

## EXEMPTION 5 U.S.C. § 552(b)(7)(E)
## LAW ENFORCEMENT TECHNIQUES AND PROCEDURES

100.) 5 U.S.C. § 552(b)(7)(E) provides protection for all law enforcement

information that:

> would disclose techniques and procedures for law enforcement investigations and
> prosecutions, or would disclose guidelines for law enforcement investigations or
> prosecutions if such disclosure could reasonably be expected to risk
> circumvention of the law.

101.) Exemption 7E applies to a very broad range of law enforcement

information and is comprised of two distinctive protective clauses. The first clause permits the

withholding of "records or information compiled for law enforcement purposes . . . [that] would

disclose techniques and procedures for law enforcement investigations and prosecutions." This

clause does not require a showing of harm, or risk of circumvention of law, that would be caused

by disclosure, and is designed to provide "categorical" protection to the information, so long as

the technique or procedure is not well known to the public. However, some commonly known

procedures have been protected from disclosure when their usefulness may not be widely known

or their use in connection with other elements of an investigation and in their totality directed

towards a specific investigative goal constitutes a "technique" meriting protection. The second

clause of Exemption 7E protects guidelines for law enforcement investigations and prosecutions if their disclosure could reasonably be expected to risk circumvention of the law. As such, a distinct harm standard is built into this clause. Generally, the second clause is used to protect law enforcement guideline information. EOUSA is not utilizing this clause of Exemption 7E in this case.

   102.) EOUSA has asserted Exemption 7E, and in some instances in conjunction with Exemption 2, to withhold details of the following techniques and procedures for law enforcement investigations and prosecutions: (1) how cell phone subscriber information is captured on a subject cell phone; (2) the variations of coverage of a court order as applied to the subject's cell phone number; (3) the geographic and physical limitations of a caller identification feature and of a Global Positioning System ("GPS") feature ((b)(2) & (b)(7)(E)); (4) under what conditions a subject's cell phone activity will be captured ((b)(2) & (b)(7)(E)); (5) how subjects in money laundering activities use cell phones to further their criminal activity; (6) how and when to request court approval for the collection of historical cell site information or GPS information or cell site information; (7) the availability of GPS capabilities and ways in which it can be activated ((b)(2) & (b)(7)(E)); (8) how law enforcement officials use cell phone location information and the ways in which subjects/targets can use the knowledge that the government is surveilling cell phone activity; (9) the legal requirements for seeking court approval to obtain cell site and non-GPS information, and the scope of the information to be gathered with the court order; (10) the type of transmitted signaling information that is collected pursuant to a court order; (11) the types of unique identifiers of the target cell phone that will be provided pursuant to a court order; (12) the conditions under which cell site information will not be collected ((b)(2) & (b)(7)(E)); and (13) the ways in which co-conspirators can be identified by using information

related to a target's cell phone activity ((b)(2) & (b)(7)(E)).

103.) As stated above, the responsive records were compiled by the named USAOs for investigatory purposes in connection with prospective or pending criminal prosecutions. Accordingly, these records were compiled for law enforcement purposes. Moreover, the techniques and procedures described in the responsive documents, supra ¶ 101, relate to law enforcement investigations and prosecutions. This material contains a level of detail regarding cell phone technology and the ways in which law enforcement agents can detect cell phone activity, the identity of callers, subscribers, and co-conspirators, and the cell site location that is not well-known to the public. While it may be well-known that law enforcement agencies can monitor targets' cell phone use, the character of the details contained in this material is both technical and practical, and could provide a fairly clear roadmap to those individuals who are interested in avoiding detection of their criminal activities. In addition, the disclosure of this level of detail could nullify the effectiveness of these techniques, thereby significantly hampering the government's law enforcement efforts. For these reasons, EOUSA is utilizing the categorical protection afforded by Exemption 7E for the details of these techniques and procedures.

104.) There are certain techniques and procedures, as noted above, supra ¶ 101, that if released, would also risk circumvention of the law. Specifically, the release of these techniques would equip lawbreakers with information pertaining to the geographic and physical limitations of caller identification and GPS features, under what conditions their cell phone activity will be captured, the ways in which GPS capabilities are activated, when their cell phone activity will not be captured, and the ways in which law enforcement agents identify co-conspirators. The possession of this information by individuals involved in criminal activity would allow them to take evasive actions in order to avoid detection, to destroy or tamper with

evidence, and to coordinate false exculpatories. Consequently, the effectiveness of these techniques and procedures would clearly be nullified by the disclosure of this information to the public. For these reasons, EOUSA has asserted Exemption (b)(7)(E) to withhold this information in the following documents listed in Attachment YY: 1, 3-11, 13-15, 17-18, 25-29, 32-34, 40, 41, 44, 45, 47, 59, 61, 62, 68, 70. EOUSA has asserted Exemption (b)(7)(E) in conjunction with Exemption (b)(2) (high) in the following documents listed in Attachment YY: 2, 69, 71.

## DISCRETIONARY DISCLOSURES

105.) The EOUSA has reviewed all records for discretionary release under the terms of the Attorney General's March 19, 2009 Memorandum on the FOIA. The EOUSA has reviewed the records to determine if it is reasonably foreseeable that disclosure would harm an interest protected by one of the FOIA's statutory exemptions or the disclosure is prohibited by law.

106.) By letter dated May 14, 2009, the EOUSA made a discretionary release of 130 pages of material in full to the Plaintiff. (**See Attachment XX.**)

## SEGREGABILITY OF NON-EXEMPT INFORMATION

107.) In this matter, all responsive information has been provided to Plaintiff and reasonably segregable information was disclosed after deletion of the exempt information. The responsive documents were evaluated to determine if any information could be segregated and released. The documents withheld in their entirety contained no meaningful portions that could be released without destroying the integrity of the document or without identifying a third party individual.

108.) Each step in the handling of Plaintiff's request has been entirely consistent with the EOUSA and the USAO's procedures adopted to insure an equitable response to all

persons seeking access to records under the FOIA/PA.  In sum, the EOUSA has properly

responded to Plaintiff's FOIA request and has provided Plaintiff with all of the reasonably

segregable nonexempt information to which it is entitled.

I declare under penalty of perjury that the foregoing is true and correct and that Attachments A through XX attached hereto are true and correct copies.

Executed on _May 27_, 2009.

Karen M. Finnegan
KAREN M. FINNEGAN
Attorney Advisor, EOUSA

November 29, 2007

**VIA FACSIMILE AND FEDERAL EXPRESS**

FOIA/Privacy Staff
Executive Office for United States Attorneys
United States Department of Justice
Suite 7300, Bicentennial Building
600 E Street, N.W.
Washington, DC 20530-0001
Fax: 202.616.6478

Re:    **REQUEST UNDER FREEDOM OF INFORMATION ACT /**
       **Expedited Processing Requested**

Attention:

      This letter constitutes a request by the American Civil Liberties Union
and the American Civil Liberties Union Foundation ("ACLU") under the
Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, and the
Department of Justice implementing regulations, 28 C.F.R. § 16.1 *et seq.*[1]

I.     **The Request for Information**

      Recent court decisions and media reports reveal that United States
Attorneys Offices ("USAOs") are assisting law enforcement officers in
obtaining information from mobile carriers that enables officers to track the
location of individuals' mobile phones.[2]  Court decisions indicate that USAOs
claim not to need probable cause to obtain real-time tracking information.
News reports further suggest that some field offices are violating a
Department of Justice "internal recommendation" that "federal prosecutors
seek warrants based on probable cause to obtain precise location data in

---

[1] The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides
legal representation free of charge to individuals and organizations in civil rights and civil
liberties cases, and educates the public about civil rights and civil liberties issues.  The
American Civil Liberties Union is a separate non-profit, non-partisan, 501(c)(4) membership
organization that educates the public about the civil liberties implications of pending and
proposed state and federal legislation, provides analyses of pending and proposed legislation,
directly lobbies legislators, and mobilizes its members to lobby their legislators.
[2] Ellen Nakashima, *Cellphone Tracking Powers on Request*, Washington Post, Page A01,
Nov. 23, 2007, available at http://www.washingtonpost.com/wp-
dyn/content/article/2007/11/22/AR2007112201444_2.html?hpid=topnews.

Attachment A

private areas."[3]  Also, news reports raise the possibility that on at least some occasions, law enforcement officers obtain tracking data directly from mobile carriers without any court involvement whatsoever.[4]

This request seeks information regarding these practices.  Accordingly, the ACLU seeks disclosure of records regarding:

1. Policies, procedures, and practices followed to obtain mobile phone location information for law enforcement purposes;

2. The "internal recommendation" that "federal prosecutors seek warrants based on probable cause to obtain precise location data in private areas" described in Ellen Nakashima, *Cellphone Tracking Powers on Request*, Washington Post, Page A01, Nov. 23, 2007, attached as Appendix A;

3. Any violations of the "internal recommendation";

4. The number of times the government has applied for a court order, based on less than probable cause, authorizing it to obtain mobile phone location information, and whether such applications were successful;

5. The case name, docket number, and court of all criminal prosecutions, current or past, of individuals who were tracked using mobile location data, where the government did not first secure a warrant based on probable cause for such data.

## II.    Offices to be Searched

We request that you search the following EOUSA Staffs:  Office of the Director, Counsel to the Director, Attorney General Advisory Committee, Legal Programs, and General Counsel.  In formulating this list, we relied on the staff descriptions available at www.usdoj.gov/usao/eousa/staff.html#lp.

In addition, we request that you search the United States Attorneys' Offices in the following locations:  California, District of Columbia, Indiana, Louisiana, New Jersey, Florida, and Nevada.  For each state listed above, please search all United States Attorneys' Offices within the state.

---

[3] *Id.*
[4] *Id.* ("Justice Department officials said to the best of their knowledge, agents are obtaining court approval unless the carriers provide the data voluntarily.")

## III.    Limitation of Processing Fees

The ACLU requests a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media . . .") and 28 C.F.R. §§ 16.11(c)(1)(i), 16.11(d)(1) (search and review fees shall not be charged to "representatives of the news media."). As a "representative of the news media," the ACLU fits within this statutory and regulatory mandate. Fees associated with the processing of this request should, therefore, be limited accordingly.

The ACLU meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience." *National Security Archive v. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

The ACLU is a national organization dedicated to the defense of civil rights and civil liberties. Dissemination of information to the public is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes newsletters, news briefings, right-to-know documents, and other educational and informational materials that are broadly disseminated to the public. Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its public education department. The ACLU also disseminates information through its heavily visited web site: http://www.aclu.org/. The web site addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The website specifically includes features on information obtained through the FOIA. *See, e.g.*, www.aclu.org/patriot_foia; www.aclu.org/torturefoia; http://www.aclu.org/spyfiles. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail.

In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico. These offices further disseminate ACLU material to local residents, schools and organizations through a variety of means including their own websites, publications and newsletters. Further, the ACLU makes archived

3

material available at the American Civil Liberties Union Archives, Public Policy Papers, Department of Rare Books and Special Collections, Princeton University Library. ACLU publications are often disseminated to relevant groups across the country, which then further distribute them to their members or to other parties.

Depending on the results of the Request, the ACLU plans to "disseminate the information" gathered by this Request "among the public" through these kinds of publications in these kinds of channels. The ACLU is therefore a "news media entity." *Cf. Electronic Privacy Information Ctr. v. Department of Defense*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the media" for purposes of FOIA).

Disclosure is not in the ACLU's commercial interest. The ACLU is a "non-profit, non-partisan, public interest organization." *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003). Any information disclosed by the ACLU as a result of this FOIA will be available to the public at no cost.

## IV.   Waiver of all Costs

The ACLU additionally requests a waiver of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). Disclosure in this case meets the statutory criteria, and a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'").

Disclosure of the requested information will help members of the public understand the privacy risks of carrying a mobile phone. The government's policies and practices for monitoring the locations of mobile phones are unclear. It is not even apparent whether the government routinely obtains mobile phone location information without any court supervision whatsoever. Under these circumstances, there is little doubt that the requested information will "contribute significantly to public understanding." 5 U.S.C. § 552(a)(4)(A)(iii).

4

As a nonprofit 501(c)(3) organization and "representative of the news media" as discussed in Section III, the ACLU is well-situated to disseminate information it gains from this request to the general public and to groups that protect constitutional rights. Because the ACLU meets the test for a fee waiver, fees associated with responding to FOIA requests are regularly waived for the ACLU.[5]

The records requested are not sought for commercial use, and the requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described in Section III. As also stated in Section III, the ACLU will make any information disclosed as a result of this FOIA available to the public at no cost.

## V.    Expedited Processing Request

Expedited processing is warranted because there is "[a]n urgency to inform the public about an actual or alleged federal government activity" by organizations "primarily engaged in disseminating information." 28 C.F.R. § 16.5(d)(1)(ii).[6]

The overwhelming majority of Americans—over 200 million people—carry mobile phones.[7] This large number is steadily increasing. The information the ACLU seeks therefore bears on the privacy of a vast segment of the United States population.

The limited information currently available about the government's tracking practices raises serious questions about whether the government is

---

[5] For example, in May 2005, the United States Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU with regard to a request submitted that month regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. Also, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in August of 2004. In addition, the Office of Science and Technology Policy in the Executive Office of the President said it would waive the fees associated with a FOIA request submitted by the ACLU in August 2003. In addition, three separate agencies – the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice – did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.
[6] The ACLU is "primarily engaged in disseminating information," as discussed in Sections III and IV.
[7] CTIA—The Wireless Association—Survey Results, June 2007, available at http://www.ctia.org/media/press/body.cfm/prid/1717.

complying with the law and the Constitution. The courts are divided on whether it is lawful for the government to track individuals without first obtaining a warrant based on probable cause. Several judges have held that the government lacks this authority.[8] It now seems likely that the government's view of its surveillance powers is even more expansive than previously thought, and that it believes it can access such information without any court oversight whatsoever.

Given the pervasive nature of cell phone ownership, and the lack of clarity regarding the privacy individuals using cell phones can expect, there is "[a]n urgency to inform the public about an actual or alleged federal government activity." 28 C.F.R. § 16.5(d)(1)(ii).

This FOIA request is entitled to expedited processing for a second reason. The information sought relates to "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

The dubious legality of the government's actions, described above, raise questions about the government's integrity. Further, there is exceptional media interest in the government's tracking of mobile phones. The most recent rash of news coverage was prompted by the Washington Post story discussed above.[9] Newspapers across the country deemed the Washington Post article sufficiently important that it was reprinted in the Charlotte Observer, Chicago Tribune, Cincinnati Post, Houston Chronicle, Lexington Herald-Leader, Pittsburgh Post-Gazette, Seattle Times, South Florida Sun-Sentinel, and St. Paul Pioneer Press. Other publications ran their own stories on the subject.[10] National television stations immediately devoted coverage to

---

[8] *See, e.g.*, In the Matter of the Application of the UNITED STATES of America for ORDERS AUTHORIZING the INSTALLATION and Use of PEN REGISTERS and Caller Identification Devices on Telephone Numbers [Sealed] and [Sealed], 416 F.Supp.2d 390, 391 (D. Md. 2006) ("Unless and until Congress takes further action, the court may only authorize disclosure of prospective cell site information upon a showing of probable cause pursuant to Rule 41."); In the Matter of an APPLICATION OF THE UNITED STATES FOR AN ORDER (1) AUTHORIZING THE USE OF A PEN REGISTER AND A TRAP AND TRACE DEVICE and (2) Authorizing Release of Subscriber Information and/or Cell Site Information, 396 F.Supp.2d 294, 295 (E.D.N.Y. 2005) ("[E]xisting law does not permit the government to obtain the requested information on a prospective, real-time basis without a showing of probable cause.").
[9] Ellen Nakashima, *Cellphone Tracking Powers on Request*, Washington Post, Page A01, Nov. 23, 2007, Appendix A.
[10] *Justice Department Defends Use of Cell-Phone Tracking Data*, Fox News, Nov. 24, 2007, at http://www.foxnews.com/story/0,2933,312647,00.html; *Feds Push for Real-Time Cell-*

the story.[11] The revelations in the Washington Post story prompted editorial boards around the country to voice concern over Justice Department practices.[12] This recent coverage is only the most current example of persistent press interest in the government's use of cell phones as tracking devices.[13] Of course, the more general issue of the government's expansive view of its surveillance powers has been the subject of sustained news coverage, extensive congressional oversight hearings, and numerous lawsuits throughout the country.

The ACLU expects the determination of this request for expedited processing within 10 calendar days and the determination of this request for documents within 20 days. *See* 28 CFR § 16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i). If this request is denied in whole or in part, we ask that you justify all deletions by reference to specific exemptions to FOIA. We request the release of all segregable portions of otherwise exempt material. The

---

*Phone Tracking Data*, San Jose Mercury News, Nov. 23, 2007, at 4a; *Phone Tech Raises Privacy Concerns*, United Press International, Nov. 23, 2007.

[11] Cable News Network, Kelli Arena interviews Mark Rotenberg, Nov. 23, 2007, transcript available at 2007 WLNR 23221490; Fox News coverage, Nov. 23, 2007, transcript available at 2007 WLNR 23256527.

[12] Editorial, *Probable Abuse*, Albany Times Union, Nov. 27, 2007; Editorial, *Privacy Threat, Congress and the Judiciary Should Promulgate Tighter Rules for Government Access to Cell Phone Data*, Houston Chronicle, Nov. 25, 2007; Editorial, *Tracking You Down*, Syracuse Post-Standard, Nov. 25, 2007.

[13] Brendan I. Koerner, *Your Cellphone is a Homing Device*, Legal Affairs, July/August 2003; William B. Baker, *New York Case Tests Law of Surveillance on Cell Phone Location Data*, Privacy in Focus, Sept. 2005; Declan McCullagh, *Police Blotter: Cell Phone Tracking Rejected*, CNET News.com, Sept. 2, 2005, at: http://www.news.com/Police-blotter-Cell-phone-tracking-rejected/2100-1030_3-5846037.html; Al Gidari, *Yet Another Court Rules that Disclosure of Cell Site/Location Information Requires Probable Cause Showing*, Digestible Law: Perkins Coie's Internet Case Digest, Oct. 21, 2005; Ryan Singel, *U.S. Cell-Phone Tracking Clipped*, Wired, Oct. 27, 2005; Anita Ramasastry, *Every Move You Make, Part Three: Why Law Enforcement Should Have to Get a Warrant Before Tracking Us Via our Cell Phones*, FindLaw.com, Nov. 10, 2005, at: http://writ.news.findlaw.com/ramasastry/20051110.html; Matt Richtel, *Live Tracking of Mobile Phones Prompts Court Fights on Privacy*, New York Times, Dec. 10, 2005, at A1; Neal Conan, *NPR Talk of the Nation: Surveillance Via Cell Phone*, National Public Radio, Dec. 14, 2005; Tresa Baldas, *Feds' Cell Phone Tracking Divides the Courts*, The National Law Journal, Jan. 19, 2006; Scott Cameron, *Your Cell Phone Is A Homing Beacon – Should The Government Be Allowed To Use It Without Showing Probable Cause?*, The IP Law Blog, April 12, 2006; Stephen V. Treglia, *Trailing Cell Phones: Courts Grapple With Requests from Prosecutors Seeking Prospective Tracking*, New York Law Journal, July 18, 2006; Daniel R. Sovocool & Kristin Jamberdino, *Tracking a User's Location Via Cell Phone*, ipFrontline.com, Nov. 16, 2006, at: http://www.ipfrontline.com/depts/article.asp?id=9633&deptid=5; Linda Coady, *Government May Track Cell Phone Movements, N.Y. Court Says*, Privacy Litigation Reporter, Vol. 4:3, Nov. 17, 2006.

ACLU reserves the right to appeal a decision to withhold any information or to deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish all applicable records to:

Catherine Crump
Staff Attorney
American Civil Liberties Union Foundation
125 Broad Street, 17th floor
New York, NY 10004

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief.

Sincerely,

Catherine Crump
Staff Attorney
American Civil Liberties Union

# Appendix

# Cellphone Tracking Powers on Request

Advertisement

Secret Warrants Granted Without Probable Cause

By Ellen Nakashima
Washington Post Staff Writer
Friday, November 23, 2007; A01

Federal officials are routinely asking courts to order cellphone companies to furnish real-time tracking data so they can pinpoint the whereabouts of drug traffickers, fugitives and other criminal suspects, according to judges and industry lawyers.

In some cases, judges have granted the requests without requiring the government to demonstrate that there is probable cause to believe that a crime is taking place or that the inquiry will yield evidence of a crime. Privacy advocates fear such a practice may expose average Americans to a new level of government scrutiny of their daily lives.

Such requests run counter to the Justice Department's internal recommendation that federal prosecutors seek warrants based on probable cause to obtain precise location data in private areas. The requests and orders are sealed at the government's request, so it is difficult to know how often the orders are issued or denied.

The issue is taking on greater relevance as wireless carriers are racing to offer sleek services that allow cellphone users to know with the touch of a button where their friends or families are. The companies are hoping to recoup investments they have made to meet a federal mandate to provide enhanced 911 (E911) location tracking. Sprint Nextel, for instance, boasts that its "loopt" service even sends an alert when a friend is near, "putting an end to missed connections in the mall, at the movies or around town."

With Verizon's Chaperone service, parents can set up a "geofence" around, say, a few city blocks and receive an automatic text message if their child, holding the cellphone, travels outside that area.

"Most people don't realize it, but they're carrying a tracking device in their pocket," said Kevin Bankston of the privacy advocacy group Electronic Frontier Foundation. "Cellphones can reveal very precise information about your location, and yet legal protections are very much up in the air."

In a stinging opinion this month, a federal judge in Texas denied a request by a Drug Enforcement Administration agent for data that would identify a drug trafficker's phone location by using the carrier's E911 tracking capability. E911 tracking systems read signals sent to satellites from a phone's Global Positioning System (GPS) chip or triangulated radio signals sent from phones to cell towers. Magistrate Judge Brian L. Owsley, of the Corpus Christi division of the Southern District of Texas, said the agent's affidavit failed to focus on "specifics necessary to establish probable cause, such as relevant dates, names and places."

Owsley decided to publish his opinion, which explained that the agent failed to provide "sufficient specific information to support the assertion" that the phone was being used in "criminal" activity. Instead, Owsley wrote, the agent simply alleged that the subject trafficked in narcotics and used the phone to do so. The agent stated that the DEA had " 'identified' or 'determined' certain matters," Owsley wrote, but "these identifications, determinations or revelations are not facts, but simply

conclusions by the agency."

Instead of seeking warrants based on probable cause, some federal prosecutors are applying for orders based on a standard lower than probable cause derived from two statutes: the Stored Communications Act and the Pen Register Statute, according to judges and industry lawyers. The orders are typically issued by magistrate judges in U.S. district courts, who often handle applications for search warrants.

In one case last month in a southwestern state, an FBI agent obtained precise location data with a court order based on the lower standard, citing "specific and articulable facts" showing reasonable grounds to believe the data are "relevant to an ongoing criminal investigation," said Al Gidari, a partner at Perkins Coie in Seattle, who reviews data requests for carriers.

Another magistrate judge, who has denied about a dozen such requests in the past six months, said some agents attach affidavits to their applications that merely assert that the evidence offered is "consistent with the probable cause standard" of Rule 41 of the Federal Rules of Criminal Procedure. The judge spoke on condition of anonymity because of the sensitivity of the issue.

"Law enforcement routinely now requests carriers to continuously 'ping' wireless devices of suspects to locate them when a call is not being made . . . so law enforcement can triangulate the precise location of a device and [seek] the location of all associates communicating with a target," wrote Christopher Guttman-McCabe, vice president of regulatory affairs for CTIA -- the Wireless Association, in a July comment to the Federal Communications Commission. He said the "lack of a consistent legal standard for tracking a user's location has made it difficult for carriers to comply" with law enforcement agencies' demands.

Gidari, who also represents CTIA, said he has never seen such a request that was based on probable cause.

Justice Department spokesman Dean Boyd said field attorneys should follow the department's policy. "We strongly recommend that prosecutors in the field obtain a warrant based on probable cause" to get location data "in a private area not accessible to the public," he said. "When we become aware of situations where this has not occurred, we contact the field office and discuss the matter."

The phone data can home in on a target to within about 30 feet, experts said.

Federal agents used exact real-time data in October 2006 to track a serial killer in Florida who was linked to at least six murders in four states, including that of a University of Virginia graduate student, whose body was found along the Blue Ridge Parkway. The killer died in a police shooting in Florida as he was attempting to flee.

"Law enforcement has absolutely no interest in tracking the locations of law-abiding citizens. None whatsoever," Boyd said. "What we're doing is going through the courts to lawfully obtain data that will help us locate criminal targets, sometimes in cases where lives are literally hanging in the balance, such as a child abduction or serial murderer on the loose."

In many cases, orders are being issued for cell-tower site data, which are less precise than the data derived from E911 signals. While the E911 technology could possibly tell officers what building a suspect was in, cell-tower site data give an area that could range from about three to 300 square miles.

Since 2005, federal magistrate judges in at least 17 cases have denied federal requests for the

less-precise cellphone tracking data absent a demonstration of probable cause that a crime is being committed. Some went out of their way to issue published opinions in these otherwise sealed cases.

"Permitting surreptitious conversion of a cellphone into a tracking device without probable cause raises serious Fourth Amendment concerns especially when the phone is in a house or other place where privacy is reasonably expected," said Judge Stephen William Smith of the Southern District of Texas, whose 2005 opinion on the matter was among the first published.

But judges in a majority of districts have ruled otherwise on this issue, Boyd said. Shortly after Smith issued his decision, a magistrate judge in the same district approved a federal request for cell-tower data without requiring probable cause. And in December 2005, Magistrate Judge Gabriel W. Gorenstein of the Southern District of New York, approving a request for cell-site data, wrote that because the government did not install the "tracking device" and the user chose to carry the phone and permit transmission of its information to a carrier, no warrant was needed.

These judges are issuing orders based on the lower standard, requiring a showing of "specific and articulable facts" showing reasonable grounds to believe the data will be "relevant and material" to a criminal investigation.

Boyd said the government believes this standard is sufficient for cell-site data. "This type of location information, which even in the best case only narrows a suspect's location to an area of several city blocks, is routinely generated, used and retained by wireless carriers in the normal course of business," he said.

The trend's secrecy is troubling, privacy advocates said. No government body tracks the number of cellphone location orders sought or obtained. Congressional oversight in this area is lacking, they said. And precise location data will be easier to get if the Federal Communication Commission adopts a Justice Department proposal to make the most detailed GPS data available automatically.

Often, Gidari said, federal agents tell a carrier they need real-time tracking data in an emergency but fail to follow up with the required court approval. Justice Department officials said to the best of their knowledge, agents are obtaining court approval unless the carriers provide the data voluntarily.

To guard against abuse, Congress should require comprehensive reporting to the court and to Congress about how and how often the emergency authority is used, said John Morris, senior counsel for the Center for Democracy and Technology.

*Staff researcher Richard Drezen contributed to this report.*

View all comments that have been posted about this article.

Post a Comment

View all comments that have been posted about this article.



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757  Fax 202-616-6478

DEC -7 2007

Requester: Catherine Crump

Request Number: 07-4120 - 4138

Dear Ms. Juhasz-Wood:

This is in response to your letter dated November 29, 2007 (and received in our office on November 30, 2007), in which you request expedited treatment of your Freedom of Information Act/Privacy Act request. As you may know, expedited treatment allows one requester to receive processing of his or her request ahead of other requesters who have already filed their requests. Not surprisingly, such a displacement of others who have legal rights to a prompt agency response cannot be done except under circumstances that clearly warrant the action, as carefully defined by agency regulation. The Department of Justice has published its rules for granting expedited processing at 28 Code of Federal Regulations § 16.5(d).

After careful consideration of your letter, I have concluded that you have not presented a case that would warrant granting expedited processing ahead of others. You have requested expedited processing on grounds that there is "an urgency to inform the public about an actual or alleged federal government activity by" an organization "primarily engaged in disseminating information." 28 C.F.R. 16.5(d)(1)(ii). First, you have not demonstrated that your organization is primarily engaged in disseminating information. Although the ACLU does indeed disseminate information, as you indicate, we conclude that this is not the primary activity of the ACLU. As the ACLU itself has stated, its mission is to fight civil liberties violations wherever and whenever they occur through representing clients in court actions. Congress has clearly, specifically stated that the standard requires that information dissemination must be the main activity of the requester, not just an activity of the requester. H.R. Rep. No. 104-795, at 26 (1996). We conclude that information dissemination is not the main activity of the ACLU. Furthermore, we fail to see the urgency to inform the public, required by the standard, and your letter does not support such an urgency. Accordingly, I must deny your request for expedited treatment.

We are proceeding to process your request in the normal order.

Attachment B

You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the letter and envelope should be marked, "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 20 C.F.R. §16.9.

Sincerely,

William G. Stewart II
Assistant Director

Form No. 015 - 2/06



**U.S. Department of Justice**

*Executive Office, United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
(202) 616-6757  FAX:  616-6478  (www.usdoj.gov/usao)

Requester: Catherine Crump          Request No.:   07-4122

DEC - 7 2007

Subject: Mobile Phone Tracking (Item 1-4)/CAN

The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act (FOIA/PA) request. It has been assigned the above number. Please give us this number if you write about your request. If we need additional information, we will contact you within two weeks.

Your request will be placed in the order in which it was received for processing, unless it is a very large request (Project Request). Then, it will be placed in a separate group of Project Requests, which are also processed in the order received.

EOUSA makes every effort to process most requests within a month (20 working days). There are some exceptions; for example, Project Requests usually take approximately nine months to process. Requests for "all information about myself in criminal case files" are usually Project Requests. If you have made such a request, you may either write us and narrow your request for specific items, or you may expect that the processing of your request may take nine months from the date of this letter.

By making a FOIA/PA request, you have agreed to pay fees up to $25, as stated in 28 CFR § 16.3(c), unless you have requested a fee waiver. Please note that pursuant to 28 CFR § 16.11, if you have not been granted a fee waiver, we are required to charge fees for time used to search for the documents you have requested and for duplication of all pages released to you. Normally, search time is charged at a rate of $28 per hour after the first two hours which are free, and duplication fees are $0.10 per page after the first 100 pages which are free. Please do not send any payment at this time! If we anticipate that fees will exceed $25 or the amount you have stated in your letter (if greater than $25), we will normally notify you of our estimate of fees. After we have received your agreement to pay for the expected fees (or you have narrowed your request to reduce fees) and we have processed your request, we will require payment for the accumulated charges before we release documents to you. Without such payment, your request file will be closed without further action.

If you wish to revise your request to try to reduce fees, you may use the attached form. If you do not wish to incur fees for your request as it is now stated, please submit this form (or your letter revising your request) to us immediately so that your request, and fees, can be limited.

Sincerely,

*William G. Stewart II*

William G. Stewart II
Assistant Director

Form No. 001 - 3/07

Attachment C

Requester: Catherine Crump          Request Number:  07-4122

## CHOOSE ONE

___**I understand that I am entitled to the first 100 pages and 2 hours of search time free**.  Please search only up to 2 hours and process only up to 100 pages that can be released to me.

___I wish to withdraw my request.

___I wish to revise my request to try to reduce fees.  Please limit my request to the following documents:

_____

_____

_____

_____

(Please note that a search for specific records may sometimes require more search time and fees).

___Please search only up to the following number of hours: _____
**I understand that search payment will be required even if no documents are located or released to me.**  In the event that documents are located and released to me, I understand that I may be charged duplication fees in addition to search fees.

_____          _____
Name                                                      Date

Please return to:

EOUSA
FOIA/PA
600 E. Street, N.W., Room 7300
Washington D.C., 20530



**U.S. Department of Justice**

Executive Office for United States Attorneys

---

FOIA Unit

*Suite 7300, Bicentennial Building*          *(202) 616-6757*
*600 E Street, N.W.*                          *FAX (202) 616-6478*
*Washington, DC 20530*

In accordance with 5 USC 552(a)(6)(B)(vi) providing for aggregating requests, the search times and duplication fees for all districts requested will be aggregated.

Requester will receive separate correspondence (acknowledgment letter or closing letter) for each file ("request") above. We will process each file ("request") separately and send a response on each as soon as it is finished.

## ADDENDUM FOR SPLIT REQUESTS

This request has been split into __16__ separate files ("requests"), as noted below, for the separate districts and/or subjects mentioned in the request letter. We have assigned the __16__ requests the following numbers:

| File ("Request") Number | Subject |
| --- | --- |
| 07-4138 | Mobile Phone Tracking (Item 1-4)/Director's Ofc. |
| 07-4120 | Mobile Phone Tracking (Item 1-4)/Legal Programs |
| 07-4121 | Mobile Phone Tracking (Item 1-4)/General Counsel |
| 07-4122 | Mobile Phone Tracking (Item 1-4)/CAN |
| 07-4123 | Mobile Phone Tracking (Item 1-4)/CAC |
| 07-4124 | Mobile Phone Tracking (Item 1-4)/CAS |
| 07-4125 | Mobile Phone Tracking (Item 1-4)/CAE |
| 07-4126 | Mobile Phone Tracking (Item 1-4)/DDC |
| 07-4127 | Mobile Phone Tracking (Item 1-4)/INN |
| 07-4128 | Mobile Phone Tracking (Item 1-4)/INS |
| 07-4129 | Mobile Phone Tracking (Item 1-4)/LAE |
| 07-4130 | Mobile Phone Tracking (Item 1-4)/LAM |
| 07-4131 | Mobile Phone Tracking (Item 1-4)/LAW |
| 07-4132 | Mobile Phone Tracking (Item 1-4)/DNJ |
| 07-4133 | Mobile Phone Tracking (Item 1-4)/FLN |
| 07-4134 | Mobile Phone Tracking (Item 1-4)/FLM |
| 07-4135 | Mobile Phone Tracking (Item 1-4)/FLS |
| 07-4136 | Mobile Phone Tracking (Item 1-4)/DNV |
| 07-4137 | Third Party Tracking Cases (Item 5) |

AMERICAN CIVIL LIBERTIES UNION, *et al.*,

Plaintiffs,

v.

DEPARTMENT OF JUSTICE,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

No. 1:08-cv-01157-JR

DEFENDANT'S SCHEDULING REPORT

## I.     BACKGROUND

In this action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, plaintiffs,

the American Civil Liberties Union and American Civil Liberties Union Foundation, seek five

categories of records from 11 components of defendant, the Department of Justice (DOJ).  The

five categories of records that plaintiffs seek are "records regarding" the following:

1. Policies, procedures, and practices followed to obtain mobile phone location information for law enforcement purposes;

2. The "internal recommendation" that "federal prosecutors seek warrants based on probable cause to obtain precise location data in private areas" described in Ellen Nakashima, *Cellphone Tracking Powers on Request*, Washington Post, Page A01, Nov. 23, 2007, attached as Appendix A;

3. Any violations of the "internal recommendation";

4. The number of times the government has applied for a court order based on less than probable cause, authorizing it to obtain mobile phone location information, and whether such applications were successful;

5. The case name, docket number, and court of all criminal prosecutions, current or past, of individuals who were tracked using mobile location data, where the government did not first secure a warrant based on probable cause for such data.

Attachment D

The 11 components of defendant from which plaintiffs seek these records in this action

are the following:

1. United States Attorney's Office (USAO), Central District of California;
2. USAO, Northern District of California;
3. USAO, District of Columbia;
4. USAO, Southern District of Florida;
5. USAO, Eastern District of Louisiana;
6. USAO, Middle District of Louisiana;
7. USAO, Northern District of Indiana;
8. USAO, District of Nevada;
9. USAO, District of New Jersey;
10. Drug Enforcement Administration (DEA);
11. Executive Office for United States Attorneys (EOUSA) (as to Category 5 only).

Am. Compl. ¶ 25.

II.     DEFENDANT'S PROPOSAL

Defendant proposes to take the following actions with respect to the five categories of

records that plaintiffs seek:

*Category 1*

Category 1 seeks "[p]olicies, procedures, and practices followed to obtain mobile phone

location information for law enforcement purposes." To the extent that they have not yet done

so, DEA and the USAOs that are the subject of this action will conduct searches for records

responsive to Category 1. The searches will assume that "mobile phone location information for

law enforcement purposes" means information about where an individual's cell phone was (or is)

located, and will seek records dated on or after September 12, 2001. All of the above searches

will be completed not later than November 30, 2008. All non-exempt material retrieved through

those searches will be produced to plaintiff not later than December 31, 2008, except material that must be reviewed prior to production by a component of the government other than a component that is the subject of this action.

*Category 2*

Category 2 seeks an "internal recommendation" mentioned in a newspaper article. Defendant has no way of identifying with certainty the "internal recommendation" to which the article refers. However, defendant presumes that the "internal recommendation" is an e-mail dated November 16, 2007, from Mark Eckenwiler, Criminal Division, DOJ. The e-mail states:

> CHIPs, I'm writing to repeat the advice given at the CHIP conference in June concerning acquisition of GPS or similarly precise location data (sometimes called "E-911 data") on target phones. We continue to believe that the most appropriate legal mechanism is a Rule 41 warrant, and I'm attaching a sample for that purpose. (Note: for mere tower/sector data – a/k/a the less accurate "cell-site" records – we remain of the view that 2703(d) & pen/trap combined are sufficient authority.)

By letter dated August 22, 2008, the Criminal Division released the above e-mail to plaintiff with redactions. In view of the release of the e-mail, defendant proposes to take no further action with respect to Category 2.

*Category 4*

Category 4 seeks "records regarding * * * [t]he number of times the government has applied for a court order based on less than probable cause, authorizing it to obtain mobile phone location information, and whether such applications were successful." To the extent they have not yet done so, DEA and the USAOs that are the subject of this action will conduct searches for records responsive to Category 4 by asking managers who are likely to have knowledge if they know of any records that set forth a compilation showing "[t]he number of times the government

3

has applied for a court order based on less than probable cause, authorizing it to obtain mobile

phone location information, and whether such applications were successful." These searches will

be completed not later than November 30, 2008. All non-exempt material retrieved through

those searches will be produced to plaintiff not later than December 31, 2008, except material

that must be reviewed prior to production by a component of the government other than a

component that is the subject of this action.

*Categories 3 and 5*

None of the components that is the subject of this action maintains a database or other

indexing system that permits the identification of cases in which applications have been made for

orders permitting mobile phone location information to be obtained, either on probable cause or

otherwise. Accordingly, defendant proposes to respond to Categories 3 and 5 by sending an e-

mail to each Assistant United States Attorney currently employed in the Criminal Division of any

USAO that is the subject of this action. The e-mail will read as follows:

> To respond to a request under the Freedom of Information Act currently in litigation, please provide me with your answers within 10 days to the following questions:
>
> 1. Do you know of any application granted on or after September 12, 2001, to permit the government to obtain information from mobile carriers about where an individual's cell phone was (or is) located where no judicial determination of probable cause was made?
>
> 2. If your answer to Question 1 is "yes," was any individual prosecuted after any such application was granted? If so, please provide the case name and docket number (including court) of each prosecution.
>
> 3. If your answer to Question 1 is "yes," do you know of any application granted since November 16, 2007, to permit the government to obtain "GPS or similarly precise location data (sometimes called 'E-911 data') on target [cell]

4

phones" from mobile carriers where no judicial determination of probable cause was made?

    4. If your answer to Question 3 is "yes," was any individual prosecuted after any such application was granted? If so, please provide the case name and docket number (including court) of each prosecution.

Questions 1 and 2 are intended to elicit information responsive to Category 5.[1] Questions 3 and 4 are intended to elicit information responsive to Category 3. The e-mail will not be sent to any employee of EOUSA because no such employee is likely to have any responsive information, and will not be sent to any employee of DEA because the e-mail would have to be sent to each of DEA's more than 4,800 case agents in order to provide a meaningful response. Conducting a canvass of that magnitude would place an undue burden on DEA. The information that the e-mail generates will not capture information from former prosecutors. However, defendant cannot respond more comprehensively to Categories 3 and 5 without conducting a page-by-page review of thousands of case files. Doing so would be unduly burdensome.

    Defendant proposes to send the e-mail not later than 10 days after any objections to its text are resolved. Defendant proposes to advise plaintiffs not later than 60 days after the e-mail is sent whether any case names and docket numbers have been identified in response to Questions 2 and 4. However, defendant intends to withhold any such case names and docket numbers pursuant to FOIA Exemption 6, 5 U.S.C. § 552(b)(6), FOIA Exemption (7)(C), 5 U.S.C. § 552(b)(7)(C), or both, to protect the personal privacy of the individuals involved.

---

[1]Question 1 is intended to elicit information about applications for historical cell site data, real-time cell site data, or precise location data. However, defendant does not concede that the "track[ing]" of individuals "using mobile location data" involves anything more than the use of precise location data.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney

s/ *David M. Glass*
ELIZABETH J. SHAPIRO, D.C. Bar 418925
DAVID M. GLASS, DC Bar 544549
Attorney, Dep't of Justice, Civil Division
20 Mass. Ave., N.W., Room 7200
Washington, D.C.  20530
Tel: (202) 514-4469/Fax: (202) 616-8470
E-mail: david.glass@usdoj.gov
Dated: November 3, 2008                    Attorneys for Defendant



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

Requester: __Catherine Crump__                    Request Number: ___07-4122___

Subject of Request: __Mobile Phone Tracking (Item 1-4)/CAN__

Dear Requester:                                                        OCT 15 2008

     Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes an interim reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices. To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

    The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act, 28 C.F.R. § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter constitutes a partial denial.

    Enclosed please find:

  __18__   page(s) are being released in full (RIF);
  __25__   page(s) are being released in part (RIP);
  __0__   page(s) are withheld in full (WIF).

    This material is responsive to item number one (1) of your request. The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

<table>
<tr><td colspan="3" align="center">Section 552</td><td align="center">Section 552a</td></tr>
<tr><td>[   ] (b)(1)</td><td>[   ] (b)(4)</td><td>[   ] (b)(7)(B)</td><td>[ X ] (j)(2)</td></tr>
<tr><td>[ X ] (b)(2)</td><td>[   ] (b)(5)</td><td>[   ] (b)(7)(C)</td><td>[   ] (k)(2)</td></tr>
<tr><td>[   ] (b)(3)</td><td>[   ] (b)(6)</td><td>[   ] (b)(7)(D)</td><td>[   ] (k)(5)</td></tr>
<tr><td>_____</td><td>[   ] (b)(7)(A)</td><td>[ X ] (b)(7)(E)</td><td>[   ] _____</td></tr>
<tr><td>_____</td><td></td><td>[   ] (b)(7)(F)</td><td></td></tr>
</table>

Attachment E

Although I am aware that this request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that if you consider my response to be a denial of your request, you have the right to file an administrative appeal by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**. In light of the fact that this is an interim response, I would ask that you wait until the EOUSA has issued its final response in this request before you file an appeal.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)

**Continuation Sheet:**

Please note that your original letter has been split into nineteen separate files ('requests"), for processing purposes, depending on the nature of what you sought. Each file will have a separate Request Number (listed below), for which you will receive a separate response: 07-4120 through 07-4138.

This response is to FOIA No. 07-4122 only and does not include search results associated with the other requests listed above.



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

Requester:   Catherine Crump                    Request Number:   07-4122

Subject of Request: Mobile Phone Tracking (Items 3-5)/CAN

Dear Requester:                                              DEC 3 1 2008

    This is in further response to your Freedom of Information Act request. This letter constitutes a final reply from the Executive Office for United States Attorneys ("EOUSA") in this request. To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes. The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act, 28 C.F.R. § 16.81. We have also processed your request under the Freedom of Information Act.

    The United States Attorneys Office for the Northern District of California ("USAO CAN") has completed a search for information responsive to your request, the terms of which are outlined in Defendant's Scheduling Report. The Court approved the search criteria contained in the Defendant's Scheduling Report on November 20, 2008. The results of that search found that with regard to item number four (4) of your request, the USAO CAN did not locate a compilation showing the number of times the government has applied for a court order based on less than probable cause, authorizing it to obtain mobile phone location information. However, after canvassing the Criminal Division Assistant U.S. Attorneys, the USAO CAN identified forty (40) cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause. This search also found that no applications were granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause. Certain of the identified cases are subject to court seals that prohibit disclosure. With regard to item number five (5) of your request, the EOUSA is withholding in its entirety all of the responsive information identified as a result of the search conducted by the USAO CAN. The exemption(s) cited for withholding this information are marked below. The USAO CAN found no records responsive to item number three (3) of your request.

<u>Section 552</u>                                                                  <u>Section 552a</u>

[  ] (b)(1)    [  ] (b)(4)    [  ] (b)(7)(B)    [ **X** ] (j)(2)
[  ] (b)(2)    [  ] (b)(5)    [ **X** ] (b)(7)(C)    [  ] (k)(2)
[  ] (b)(3)    [  ] (b)(6)    [  ] (b)(7)(D)    [  ] (k)(5)
_____    [ **X** ] (b)(7)(A)    [  ] (b)(7)(E)    [  ] _____
_____                [  ] (b)(7)(F)

    Although I am aware that this request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that if you consider my response to be a denial of your request, you have the right to file an administrative

*Attachment F*

appeal by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**.

Sincerely,

*Karen M. Finnegan for*

William G. Stewart II
Assistant Director

Enclosure(s)



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
~~Washington, D.C. 20530~~
202-616-6757  Fax 202-616-6478

Requester:  Catherine Crump _____   Request Number:  07-4123 _____

Subject of Request: Mobile Phone Tracking (Item 1-4) CAC _____

SEP -8 2008

Dear Requester:

    Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes a reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices.

    To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

    The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act. 28 CFR § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter is a [ **X** ] partial [   ] full denial.

    Enclosed please find:

  __13__ page(s) are being released in full (RIF);
  ___1__ page(s) are being released in part (RIP);
  __160__ page(s) are withheld in full (WIF). **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

    The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

| Section 552 | | | Section 552a |
|---|---|---|---|
| [   ] (b)(1) | [   ] (b)(4) | [   ] (b)(7)(B) | [ **X** ] (j)(2) |
| [   ] (b)(2) | [ **X** ] (b)(5) | [ **X** ] (b)(7)(C) | [   ] (k)(2) |
| [   ] (b)(3) | [   ] (b)(6) | [   ] (b)(7)(D) | [   ] (k)(5) |
| _____ | [   ] (b)(7)(A) | [ **X** ] (b)(7)(E) | [   ] _____ |
| _____ | | [   ] (b)(7)(F) | |

    [   ] In addition, this office is withholding grand jury material which is retained in the District.

(Page 1 of 2)

Form No. 021- no fee - 2/06

Attachment G

[  ]    A review of the material revealed:

[  ] ____ page(s) originated with another government component. **These records were found in the U.S. Attorney's Office files and may or may not be responsive to your request.** These records will be referred to the following component(s) listed for review and direct response to you:_____.

[  ]    There are public records which may be obtained from the clerk of the court or this office, upon specific request. If you wish to obtain a copy of these records, you must submit a new request. These records will be provided to you subject to copying fees.

[  ]    Please note that your original letter was split into separate files ("requests"), for processing purposes, based on the nature of what you sought. Each file was given a separate Request Number (listed below), for which you will receive a separate response:

_____

[ X ]   See additional information attached.

This is the final action on this above-numbered request. You may appeal this decision on this request by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** Both the letter and envelope should be marked "FOIA Appeal." If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. §16.9.

Sincerely,


William G. Stewart II
Assistant Director


Enclosure(s)

Form No. 021 - no fee -2/06

**Continuation Sheet:**

Please note that your original letter has been split into nineteen separate files ('requests"), for processing purposes, depending on the nature of what you sought.  Each file will have a separate Request Number (listed below), for which you will receive a separate response: 07-4120 through 07-4138.

This response is to FOIA No. 07-4123 only and does not include search results associated with the other requests listed above.



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757  Fax 202-616-6478

Requester: __Catherine Crump__          Request Number: __07-4123__

Subject of Request: __Mobile Phone Tracking (Item 1-4)/CAC__          ~~SEP 16~~ 2008

Dear Requester:

Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes a second interim reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices. To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act, 28 C.F.R. § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter constitutes a full release of 22 pages of material that is responsive to category one of your request.

Although I am aware that this request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that if you consider my response to be a denial of your request, you have the right to file an administrative appeal by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**. In light of the fact that this is an interim response, I would ask that you wait until the EOUSA has issued its final response in this request before you file an appeal.

Sincerely,

Karen M. Finnegan for

William G. Stewart II
Assistant Director

Enclosure(s)

Attachment H



U.S. Departm( )f Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

Requester: __Catherine Crump__          Request Number: __07-4123__

Subject of Request: __Mobile Phone Tracking (Item 1-4)/CAC__

                                                                                    OCT  9  2008

Dear Requester:

      Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes the third interim reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices. To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

      ~~The records you seek are located in a Privacy Act system of records that, in accordance with~~ regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act, 28 C.F.R. § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter constitutes a partial denial. The enclosed material is responsive to item number one of your request.

      Enclosed please find:

  __58__   page(s) are being released in full (RIF);
  __28__   page(s) are being released in part (RIP);
  __0__   page(s) are withheld in full (WIF). **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

      The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

|  Section 552 | | | Section 552a |
|---|---|---|---|
| [ ] (b)(1) | [ ] (b)(4) | [ ] (b)(7)(B) | [ **X** ] (j)(2) |
| [ ] (b)(2) | [ ] (b)(5) | [ ] (b)(7)(C) | [ ] (k)(2) |
| [ ] (b)(3) | [ ] (b)(6) | [ ] (b)(7)(D) | [ ] (k)(5) |
| _____ | [ ] (b)(7)(A) | [ **X** ] (b)(7)(E) | [ ] _____ |
| _____ | | [ ] (b)(7)(F) | |

Attachment I

Although I am aware that this request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that if you consider my response to be a denial of your request, you have the right to file an administrative appeal by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**. In light of the fact that this is an interim response, I would ask that you wait until the EOUSA has issued its final response in this request before you file an appeal.

Sincerely,


William G. Stewart II
Assistant Director


Enclosure(s)



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

Requester: __Catherine Crump__                    Request Number: __07-4123__

Subject of Request: __Mobile Phone Tracking (Item 1-4)/CAC__

OCT 1 5 2008

Dear Requester:

    Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes the fourth interim reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices. To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

    The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act, 28 C.F.R. § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. The enclosed material, consisting of nine (9) pages of material, is being released to you without excision and is responsive to item number one of your request.

    Although I am aware that this request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that if you consider my response to be a denial of your request, you have the right to file an administrative appeal by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** In light of the fact that this is an interim response, I would ask that you wait until the EOUSA has issued its final response in this request before you file an appeal.

                          Sincerely,

                          William G. Stewart II
                          Assistant Director

Enclosure(s)

Attachment J



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

Requester:   Catherine Crump                          Request Number:   07-4123

Subject of Request: Mobile Phone Tracking (Items 3-5)/CAC

Dear Requester:

     This is in further response to your Freedom of Information Act request.  This letter constitutes a final reply from the Executive Office for United States Attorneys ("EOUSA") in this request.  To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.  The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act, 28 C.F.R. § 16.81.  We have also processed your request under the Freedom of Information Act.

     The United States Attorneys Office for the Central District of California ("USAO CAC") has completed a search for information responsive to your request, the terms of which are outlined in Defendant's Scheduling Report.  The Court approved the search criteria contained in the Defendant's Scheduling Report on November 20, 2008.  The results of that search found that with regard to item number four (4) of your request, the USAO CAC did not locate a compilation showing the number of times the government has applied for a court order based on less than probable cause, authorizing it to obtain mobile phone location information.  However, after canvassing the Criminal Division Assistant U.S. Attorneys, the USAO CAC identified twenty-three (23) cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause.  One (1) of these cases did not result in a federal prosecution.  This search also found that no applications were granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause.  With regard to item number five (5) of your request, the EOUSA is withholding in its entirety all of the responsive information identified as a result of the search conducted by the USAO CAC.  The exemption(s) cited for withholding this information are marked below.  The USAO CAC found no records responsive to item number three (3) of your request.

<div style="display:flex; gap:4em;">

**Section 552**

|     |          |     |          |     |              |
|-----|----------|-----|----------|-----|--------------|
| [   ] (b)(1) | [   ] (b)(4) | [   ] (b)(7)(B) |
| [   ] (b)(2) | [   ] (b)(5) | [ **X** ] (b)(7)(C) |
| [   ] (b)(3) | [   ] (b)(6) | [   ] (b)(7)(D) |
| _____ | [ **X** ] (b)(7)(A) | [   ] (b)(7)(E) |
|         |          | [   ] (b)(7)(F) |

**Section 552a**

[ **X** ] (j)(2)
[   ] (k)(2)
[   ] (k)(5)
[   ] _____

</div>

Attachment  K

~~Although I am aware that this request is the subject of ongoing litigation and that appeals are~~
not ordinarily acted on in such situations, I am required by statute and regulation to inform you that if
you consider my response to be a denial of your request, you have the right to file an administrative
appeal by writing within 60 days from the date of this letter to the **Office of Information and Privacy,
United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C.
20530-0001.** In light of the fact that this is an interim response, I would ask that you wait until the
EOUSA has issued its final response in this request before you file an appeal.

Sincerely,

William G. Stewart II
Assistant Director



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

Requester: __Catherine Crump_____     Request Number: __07-4126_____

Subject of Request: __Mobile Phone Tracking (Item 1-4)/DDC_____

Dear Requester:                                                                                    NOV – 6 2008

       Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes an interim reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices. To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

       The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act, 28 C.F.R. § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter constitutes a partial denial.

       Enclosed please find:

  __47__ page(s) are being released in full (RIF);
  __12__ page(s) are being released in part (RIP);
  __7__ page(s) are withheld in full (WIF).

       This material is responsive to item number one (1) of your request. One of the documents included in the released material is the Order and Memorandum Opinion of United States District Court Judge Thomas F. Hogan dated August 25, 2006, in case numbers 06-0186, 187, 188, which consists of 11 pages. This document contains redactions made by the Court; therefore, these redactions are not included in the page count above. The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

<table>
<tr><td colspan="3" align="center"><u>Section 552</u></td><td align="center"><u>Section 552a</u></td></tr>
<tr><td>[   ] (b)(1)</td><td>[   ] (b)(4)</td><td>[   ] (b)(7)(B)</td><td>[ <b>X</b> ] (j)(2)</td></tr>
<tr><td>[   ] (b)(2)</td><td>[ <b>X</b> ] (b)(5)</td><td>[ <b>X</b> ] (b)(7)(C)</td><td>[   ] (k)(2)</td></tr>
<tr><td>[   ] (b)(3)</td><td>[   ] (b)(6)</td><td>[   ] (b)(7)(D)</td><td>[   ] (k)(5)</td></tr>
<tr><td>_____</td><td>[   ] (b)(7)(A)</td><td>[ <b>X</b> ] (b)(7)(E)</td><td>[   ] _____</td></tr>
<tr><td>_____</td><td></td><td>[   ] (b)(7)(F)</td><td></td></tr>
</table>

Attachment L

A review of the material revealed that 44 pages originated with another government component. **These records were found in the U.S. Attorney's Office files and may or may not be responsive to your request.** These records will be referred to the U.S. Department of Justice, Criminal Division for review and direct response to you.

Although I am aware that this request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that if you consider my response to be a denial of your request, you have the right to file an administrative appeal by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** In light of the fact that this is an interim response, I would ask that you wait until the EOUSA has issued its final response in this request before you file an appeal.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757  Fax 202-616-6478

Requester:  Catherine Crump                    Request Number:  07-4126

Subject of Request: Mobile Phone Tracking (Items 1-5)/DDC
Dear Requester:                                          DEC 3 1 2008

This is in further response to your Freedom of Information Act request.  This letter constitutes a
final reply from the Executive Office for United States Attorneys in this request.  To provide you with
the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we
have considered your request in light of the provisions of both statutes.  The records you seek are
located in a Privacy Act system of records that, in accordance with regulations promulgated by the
Attorney General, is exempt from the access provisions of the Privacy Act, 28 C.F.R. § 16.81.  We
have also processed your request under the Freedom of Information Act.

The United States Attorneys Office for the District of Columbia ("USAO DDC") located the
enclosed material, consisting of nine (9) pages, in response to item number 1 of your request.
Excisions have been made on five (5) pages of the enclosed material.  In addition, the USAO DDC has
completed a search for information responsive to items numbered 3-5 of your request, the terms of
which are outlined in Defendant's Scheduling Report.  The Court approved the search criteria
contained in the Defendant's Scheduling Report on November 20, 2008.  The results of that search
found that with regard to item number four (4) of your request, the USAO DDC did not locate a
compilation showing the number of times the government has applied for a court order based on less
than probable cause, authorizing it to obtain mobile phone location information.  However, after
canvassing the Criminal Division Assistant U.S. Attorneys, the USAO DDC identified twenty-one (21)
cases, on or after September 12, 2001, in which the Court granted the government's application to
permit it to obtain mobile phone location information without making a judicial finding of probable
cause.  This search also found that no applications were granted after November 16, 2007, to permit the
government to obtain GPS or similarly precise location data on target cell phones without a judicial
determination of probable cause.

With regard to item number five (5) of your request, the EOUSA is withholding in its entirety
all of the responsive information identified as a result of the search conducted by the USAO DDC.
The exemption(s) cited for withholding this information are marked below. .  The USAO DDC found
no records responsive to item number three (3) of your request.

| Section 552 | | | Section 552a |
|---|---|---|---|
| [  ] (b)(1) | [  ] (b)(4) | [  ] (b)(7)(B) | [ X ] (j)(2) |
| [  ] (b)(2) | [  ] (b)(5) | [ X ] (b)(7)(C) | [  ] (k)(2) |
| [ X ] (b)(3) | [  ] (b)(6) | [  ] (b)(7)(D) | [  ] (k)(5) |
| F.R.Cr.P. 6(e) | [ X ] (b)(7)(A) | [ X ] (b)(7)(E) | [  ] _____ |
| _____ | | [  ] (b)(7)(F) | |

*Attachment M*

Although I am aware that this request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that if you consider my response to be a denial of your request, you have the right to file an administrative appeal by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**.

Sincerely,

*Karen M. Finnegan for*

William G. Stewart II
Assistant Director

Enclosure(s)



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757 Fax 202-616-6478

Requester: __Catherine Crump__          Request Number: __07-4127__

Subject of Request: __Mobile Phone Tracking (Item 1-4)/INN__

SEP 16 2008

Dear Requester:

    Your request for records under the Freedom of Information Act has been processed. This letter constitutes an interim reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorney's Offices. To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

    Some of the records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act, 28 C.F.R. § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter constitutes a partial denial. The enclosed material is responsive to category one of your request.

Enclosed please find:

  __14__ page(s) are being released in full (RIF);
  __3__ page(s) are being released in part (RIP);
  __26__ page(s) are withheld in full (WIF). **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

    The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

| Section 552 | | | Section 552a |
|---|---|---|---|
| [ ] (b)(1) | [ ] (b)(4) | [ ] (b)(7)(B) | [ X ] (j)(2) |
| [ ] (b)(2) | [ X ] (b)(5) | [ X ] (b)(7)(C) | [ ] (k)(2) |
| [ ] (b)(3) | [ ] (b)(6) | [ ] (b)(7)(D) | [ ] (k)(5) |
| _____ | [ ] (b)(7)(A) | [ ] (b)(7)(E) | [ ] _____ |
| _____ | | [ ] (b)(7)(F) | |

Attachment N

Although I am aware that this request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that if you consider my response to be a denial of your request, you have the right to file an administrative appeal by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** In light of the fact that this is an interim response, I would ask that you wait until the EOUSA has issued its final response in this request before you file an appeal.

Sincerely,

*Karen M. Finnegan*

William G. Stewart II
Assistant Director

Enclosure(s)



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

Requester:  Catherine Crump                    Request Number:   07-4127

Subject of Request: Mobile Phone Tracking (Items 3-5)/INN

Dear Requester:                                                DEC 3 1 2008

    This is in further response to your Freedom of Information Act request. This letter constitutes a final reply from the Executive Office for United States Attorneys ("EOUSA") in this request. To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes. The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act, 28 C.F.R. § 16.81. We have also processed your request under the Freedom of Information Act.

    The United States Attorneys Office for the Northern District of Indiana ("USAO INN") has completed a search for information responsive to your request, the terms of which are outlined in Defendant's Scheduling Report. The Court approved the search criteria contained in the Defendant's Scheduling Report on November 20, 2008. The results of that search found that with regard to item number four (4) of your request, the USAO INN did not locate a compilation showing the number of times the government has applied for a court order based on less than probable cause, authorizing it to obtain mobile phone location information. However, after canvassing the Criminal Division Assistant U.S. Attorneys, the USAO INN identified two (2) cases, on or after September 12, 2001, in which the Court granted the government's application to permit it to obtain mobile phone location information without making a judicial finding of probable cause; however, none of these cases resulted in federal prosecutions. This search also found that no applications were granted after November 16, 2007, to permit the government to obtain GPS or similarly precise location data on target cell phones without a judicial determination of probable cause. With regard to item number five (5) of your request, the EOUSA is withholding in its entirety all of the responsive information identified as a result of the search conducted by the USAO INN. The exemption(s) cited for withholding this information are marked below. The USAO INN found no records responsive to item number three (3) of your request.

<table>
<tr><td colspan="3">Section 552</td><td>Section 552a</td></tr>
<tr><td>[  ] (b)(1)</td><td>[  ] (b)(4)</td><td>[  ] (b)(7)(B)</td><td>[ X ] (j)(2)</td></tr>
<tr><td>[  ] (b)(2)</td><td>[  ] (b)(5)</td><td>[ X ] (b)(7)(C)</td><td>[  ] (k)(2)</td></tr>
<tr><td>[  ] (b)(3)</td><td>[  ] (b)(6)</td><td>[  ] (b)(7)(D)</td><td>[  ] (k)(5)</td></tr>
<tr><td>_____</td><td>[  ] (b)(7)(A)</td><td>[  ] (b)(7)(E)</td><td>[  ] _____</td></tr>
<tr><td>_____</td><td></td><td>[  ] (b)(7)(F)</td><td></td></tr>
</table>

    Although I am aware that this request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that if you consider my response to be a denial of your request, you have the right to file an administrative

Attachment O

appeal by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)