```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


AMERICAN CIVIL LIBERTIES UNION,    :
et al.,                            :
                                   :
          Plaintiffs,              :
                                   :
     v.                            :  Civil Action No. 08-1157 (JR)
                                   :
DEPARTMENT OF JUSTICE,             :
                                   :
          Defendant.               :
```

**MEMORANDUM**

Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation ("ACLU") sue the United States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, seeking documents pertaining to the use of cell phone tracking in criminal investigations and prosecutions.

The ACLU seeks this information to address what it asserts is a serious, and potentially unconstitutional, invasion of privacy. The issue in this FOIA action is not one of constitutional dimensions, however. It is whether the government has properly invoked certain FOIA exemptions to withhold, in whole or in part, lists it has compiled identifying criminal cases by name, case number and court, in which the prosecution used cell phone records or real-time data to track cell phone location without a judicial determination of probable cause; lists of applications for such data; and documents reflecting the

government's policies, procedures, and practices for obtaining cell phone records.

The FOIA questions presented are: (1) whether Exemptions 6 and 7(C) permit withholding the list of case names and docket numbers of the criminal prosecutions; (2) whether Exemptions 6 and 7(C) permit withholding the case names and docket numbers of cases in which applications to obtain cell phone records were made; (3) whether Exemptions 2 and 7(E) permit redaction of the templates used by Assistant United States Attorneys when preparing applications for cell phone tracking authority; and (4) whether the government's search for documents responsive to the ACLU's FOIA request was adequate.[1]

**1. List of criminal prosecutions**

The government invokes FOIA Exemptions 6 and 7(C) to withhold the case names and docket numbers of 255 criminal prosecutions in which courts granted applications to obtain cell phone location data without probable cause determinations. 5 U.S.C. §§ 552(b)(7)(C), (b)(6). The two exemptions overlap - both (somewhat ironically, considering the Fourth Amendment flag the ACLU is flying in this case) are meant to protect privacy. Exemption 7(C) permits withholding when disclosure "could

---

[1] Initially, the ACLU also sought an unredacted version of a final application to engage in cell phone tracking. Since the parties completed their summary judgment briefing, the government has produced a version of the final application with fewer redactions, to the ACLU's satisfaction. [# 38].

reasonably be expected to constitute an unwarranted invasion of personal privacy," while Exemption 6 permits withholding only when disclosure "would constitute a clearly unwarranted invasion of personal privacy."[2]  The proper application of both exemptions requires a balancing of individual privacy interests against the public interest.  See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 776 (1989).  If an individual's privacy interest is implicated, then a FOIA requestor must show that "(1) the public interest is a significant one; and (2) the information is likely to advance that interest."  Harrison v. EOUSA, 377 F.Supp.2d 141, 147 (D.D.C. 2005), citing NAVA v. Favish, 541 U.S. 157, 172 (2003).

In this case, the ACLU argues that the individual privacy interests implicated by the disclosures it seeks are minimal.  Most of the criminal cases were matters of public record, it argues, and most of the defendants have already been publicly linked to criminal activity, diminishing the need to protect them from further disclosure.  The ACLU points to the cases of some highly-publicized terrorist suspects to demonstrate that the government's argument does not pass "the laugh test."  The ACLU also argues that some criminal defendants may actually

---

[2]  Exemption 7(C) also requires that withheld records be "compiled for law enforcement purposes."  The ACLU concedes that the records at issue meet that requirement.  Exemption 6 pertains to "personnel and medical files."

prefer that the information be released, because it may enable them to vindicate Fourth Amendment protections.

Criminal defendants are not without privacy rights in the FOIA context, see Judicial Watch v. DOJ, 365 F.3d 1108, 1125 (D.C. Cir. 2004), and the public nature of court records does not eliminate their interest in avoiding further disclosure, see Harrison, 377 F.Supp.2d at 148; see also Reporters Committee, 489 U.S. at 770. The ACLU correctly points out, however, that Exemption 7(C) offers its greatest protection when disclosure would "involve the privacy interests of individuals who were uncharged suspects of investigations or who were merely mentioned in records." The government does cite several decisions of other judges of this court finding that Exemption 7(C) protected criminal case names and numbers from disclosure, [#32] at 2-5, but each of those decisions is distinguishable for one reason or another. For example, as the ACLU observes, Judge Lamberth's decision in Harrison v. Executive Office for United States Attorneys, 377 F.Supp.2d 141 (D.D.C. 2005), "may have been motivated by the identity of the requester [an inmate] and the creepy nature of his request [for every case prosecuted by a certain magistrate judge when he was a prosecutor]."

In striking the appropriate balance in this case, I will allocate a greater privacy interest to persons who were acquitted, or whose cases were dismissed or sealed (and remain

under seal), and a considerably lesser privacy interest to persons who were convicted, or who entered public guilty pleas.

The public's interest in the release of this information, the ACLU asserts, is in "understanding to what extent and to what end the government is engaged in cell phone tracking, to what extent these surveillance activities lead to prosecutions, and to what extent these prosecutions are successful." [#29] at p. 17. The argument is that cell phone usage is ubiquitous (or, perhaps, pandemic), and that the public has the right to examine the government's use of cell phone tracking. [#35] at p. 7. It may be true that the public has a substantial interest in the subject of cell phone tracking – in knowing what Big Brother is "up to" – but the ACLU provides only a meager explanation of just how the release of case names and docket numbers will advance that interest. It explains only that "[c]urrently the public has no idea who is prosecuted as a result of cell phone tracking, or for what kinds of crimes. The case names and docket numbers are necessary in order to be able to see to what uses this surveillance is being put," [#29] at p. 17-18, and "[b]ecause the vast majority of applications and orders remain under seal and published decisions exist in only a handful of districts, plaintiffs need the requested information to access court proceedings," id. at 18 (emphasis added). In other words (not the ACLU's words), having case names and numbers would make

it easier to find and pursue the juiciest cases - the ones that would best illustrate the Fourth Amendment argument the ACLU is apparently developing. The easier it becomes to pursue such follow-up investigations, however, the more likely it is that unwarranted invasions of personal privacy will occur.

Weighing the privacy interests of individuals who have been criminally prosecuted against the public interest that could be served by the disclosure of the case names and numbers the ACLU seeks, I find that the public interest in "what the government is up to" outweighs the privacy interests of persons who have been convicted of crimes or have entered public guilty pleas; but that the privacy interests of persons who have been acquitted, or whose cases have been sealed and remain under seal, or whose charges have been dismissed, outweigh the public interest in disclosure of their names and case numbers.

**2. Case names and docket numbers in applications**

The ACLU also seeks the case names and docket numbers included in applications requesting use of cell phone records, which the government has redacted, also under Exemptions 6 and 7(C). The ACLU concedes that case names are exempt from disclosure if they would lead to release of personally identifiable information about surveillance targets who have yet to be prosecuted. But, the government contends, after case names are redacted, nothing would be left but variants of the phrase

"In re: Application for Cell Site Authority."  I will not order the government to make such a meaningless production.  As for docket numbers on Documents 22, 27 and 67: the ACLU assumes that the cases represented by those documents are sealed and argues that release of their docket numbers would not reveal any identifying information.  Disclosure of docket numbers could reveal surveillance targets yet to be prosecuted, however – either because the cases are not actually sealed, or because the ACLU's promised motion to unseal could be successful.  The redactions from the applications pursuant to Exemption 7(C) are proper.

**3. Application templates**

The government has produced templates used to make applications for cell phone tracking authority but has redacted them pursuant to Exemptions 2 and 7(E).  Some of the redactions withhold material that is claimed to be "high 2" exempt, a category that covers "predominantly internal" documents whose disclosure would "significantly risk[] circumvention of agency regulations or statutes."  See Crooker v. Bureau of Alcohol, Tobacco, & Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981).  The other redactions invoke Exemption 7(E), which allows the government to withhold documents that are compiled for law enforcement purposes and that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or

would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of law."  5 U.S.C. § 552(b)(7)(E).

The ACLU attacks the government's *Vaughn* index as conclusory and requests *in camera* review of the documents. Although I agree that *in camera* review of twelve documents would not be unduly burdensome, I find the government's *Vaughn* descriptions to be an adequate basis for my decision.

Documents 2, 69, and 71 are described as guides or samples that AUSAs use in drafting applications, orders and declarations to obtain authorization for cell phone monitoring. These documents are not final applications or orders, so it is quite evident that they are "predominantly internal."  And, the government provides adequate affidavit support for its argument that release of the redacted information would risk circumvention of the law because it would reveal information about how co-conspirators can be identified, the conditions under which cell phone tracking would not work, and details about the conditions necessary for cell phone tracking to be effective – precisely the kind of information that Exemption 2 is intended to cover. Second

Declaration of Karen M. Finnegan,[#32-1] at ¶ 11; Crooker, 670 F.2d at 1054.

The remaining template redactions[3] are said to contain information on law enforcement techniques that are not readily available to the public, so that redaction is permissible under Exemption 7(E). As the government correctly points out, the first prong of Exemption 7(E) permits withholding of information that would disclose techniques and procedures for law enforcement investigations or prosecutions without a showing risk of circumvention. 5 U.S.C. § 552(b)(7)(E); see also Peter S. Herrick's Customer & Int'l Trade Newsletter v. U.S. Customs & Border Prot., 2006 WL 1826185, at *7 (D.D.C. June 30, 2006).[4] The redacted information reveals limitations of the law enforcement techniques, details about what the cell phone records can capture, and uses of the records that are not obvious or

---

[3]    Portions of Documents 2-3, 26-29, 32-34, and 68-71.

[4]    The ACLU argues that PHE, Inc. V. DOJ, 983 F.2d 248 (D.C. Cir. 1993) requires a showing of risk of circumvention to apply Exemption 7(E). I agree with the government's reading of the case, as the records at issue in PHE were primarily guidelines and fell under the second prong of the exemption.

well-known. [#32-1] at ¶ 15. The government has appropriately applied Exemption 7(E).

## 4. Adequacy of the searches

The ACLU requests that the government conduct further searches for final versions of 13 draft documents.[5] The original request sought "Policies, procedures, and practices followed to obtain mobile phone location information for law enforcement purposes." [#29] at p. 9. That language does not cover specific applications or orders for particular cases, and the government reasonably so construed it.

Did the defendant make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested"? Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 890 (D.C. Cir. 1995). The affidavit of Karen Finnegan that describes the search adequately demonstrates that the search was reasonable. [#32-1] at ¶ 5. The fact that the search did not yield final versions of certain draft documents does not render the search itself inadequate. Final versions may not exist, and, even if they do, a search need not yield every document to be adequate.

---

[5] The ACLU also sought the "Hodor" and "Kischer" declarations, which are components of the application package the government usually submits when it seeks cell phone tracking authority. Since the parties completed their summary judgment briefing, the government has produced both documents, to the ACLU's satisfaction.

<u>Nation Magazine</u>, 71 F.3d at 892, n. 7.  The ACLU erroneously argues that it was the government's burden to show that a more extensive search would be unduly burdensome.  That is not the rule where, as here, the government has conducted a search that fully addresses the scope of the request.  <u>See</u> <u>id</u>. at 891.

      An appropriate order accompanies this memorandum.

                                     JAMES ROBERTSON
                        United States District Judge